A03A0354. EASON v. THE STATE.
(582 SE2d 194)

RUFFIN, Presiding Judge.

A jury found Michael Eason guilty of aggravated assault. He appeals, challenging the sufficiency of the evidence and the trial court's failure to direct a verdict of acquittal. He also argues that he received ineffective assistance of trial counsel. For reasons that follow, we find the evidence sufficient to sustain Eason's conviction, but remand for a hearing on his ineffective assistance claim.

1. In addressing Eason's arguments regarding the sufficiency of the evidence and the denial of his motion for directed verdict, we apply the same standard of review.[1] "[W]e view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2] On appeal, Eason

no longer enjoy[s] the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient. . . . Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some

---

[1] See *Jackson v. State*, 236 Ga. App. 260 (511 SE2d 615) (1999).
[2] (Punctuation omitted.) Id.

competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[3]

Viewed in this manner, the evidence shows that, on the night of December 30, 2000, Eason walked to the home of his neighbor, Bruce Smith, looking for a replacement part for a broken heater. Smith did not have the proper part, but Eason stayed to drink beer and watch television with Smith and Smith's girlfriend. When Smith's girlfriend and Eason began to argue, Smith drove him home.

On the way, Smith grew concerned that Eason's house did not have heat, and he invited Eason, Eason's live-in girlfriend, Christy Caul, and Caul's eight-month-old baby to spend the night at his house. When he and Eason arrived at Eason's residence, Smith noticed that the house was dark, and he concluded that the electricity was also out. Smith told Eason to get Caul and the baby so that they could return to Smith's home.

Smith waited in his truck for several minutes, but Eason did not come out of the house. Trying to find out "what was going on," Smith let himself in Eason's front door, and he discovered that both the electricity and heat were working. Upset that Eason had lied to him about the heat, Smith told Eason that he was no longer welcome at his house. Smith then walked outside and got into his truck. As Smith turned on the ignition, Eason ran out of the front door, screaming at Smith and threatening him. Smith stepped out of the truck, and when Eason approached, Smith pushed him in the chest with "open hands." Eason then cut Smith across the face with a pocketknife. At that point, Smith climbed into his truck. Although Eason "tried to come through the passenger door with [the] pocket knife," Smith managed to drive away.

Smith's family took him to the hospital, where he underwent surgery to repair the cut, which extended through his nose up into his sinus cavity and almost to his eyes. At trial, Smith showed the jury his scar and testified that the cut had left his face partially numb.

Caul also testified on behalf of the State, but offered a different version of events. According to Caul, Smith dropped Eason off at their house, drove away, returned a few minutes later, and entered the house unannounced. Caul testified that Eason told Smith to leave, at which point Smith pushed Eason, threatened to rape Caul, and tried to grab Caul's baby. Although Eason managed to push Smith out of the front door, Smith picked up a shovel and tried to

---

[3] (Punctuation omitted.) Id. at 261.

come back into the house. Both men then went outside, and she heard Smith leave in his truck.

On appeal, Eason argues that he was justified in using reasonable force to defend himself, Caul, the baby, and his home against Smith.[4] In his view, the State failed to rebut this defense because it never controverted Caul's testimony that Smith threatened her and the baby. He argues, therefore, that the evidence demanded an acquittal.

At trial, however, Smith denied threatening Eason, Caul, or the baby. He also denied that he refused to leave their house. In fact, he testified that Eason attacked him without provocation as he tried to leave. Furthermore, the State established that Caul lied to the police during the investigation and admitted to one investigator that Eason had threatened to hurt her if she told the truth. Given this evidence, the jury was authorized to believe Smith's version of events, reject the justification defense, and find Eason guilty beyond a reasonable doubt of aggravated assault.[5]

2. Eason also argues that he was immune from prosecution under OCGA § 16-3-24.2, which provides immunity to persons justified in using force to defend their home. As noted above, however, the jury rejected Eason's justification defense. It follows that OCGA § 16-3-24.2 does not apply in this case.

3. Finally, Eason argues that his trial counsel was ineffective in several respects. The record shows that, although Eason now has new appellate counsel, trial counsel represented him during the motion for new trial proceedings. Accordingly, this appeal is Eason's first opportunity to raise an ineffective assistance claim, and we must remand to the trial court for an evidentiary hearing and ruling on this issue.[6]

*Judgment affirmed on condition and case remanded with direction. Smith, C. J., and Miller, J., concur.*

---

[4] See OCGA §§ 16-3-21 (authorizing the use of force in defense of self or others); 16-3-23 ("A person is justified in threatening or using force against another when and to the extent that he . . . reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation."). The record shows that the jury received instruction on both forms of justification.

[5] See *Warren v. State*, 253 Ga. App. 146-147 (558 SE2d 741) (2002); *Maxwell v. State*, 250 Ga. App. 628, 629 (1) (552 SE2d 870) (2001); OCGA §§ 16-5-21 (a) (2); 16-3-21; 16-3-23; see also *Davenport v. State*, 255 Ga. App. 593, 594 (1) (565 SE2d 900) (2002) ("That there may have been conflicts in the testimony of the State's witnesses is not a matter for this Court. Instead, as they were authorized to do, the jury resolved all conflicts when choosing which testimony to believe and which to reject.").

[6] See *Jones v. State*, 275 Ga. 156, 159 (3) (563 SE2d 835) (2002); *Willingham v. State*, 235 Ga. App. 475, 477 (3) (509 SE2d 744) (1998).

DECIDED MAY 12, 2003.

Rader & Cooke, Valerie C. Cooke, for appellant. ·

Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney, for appellee.