## S10A1228. THE STATE v. BUNN.

(701 SE2d 138)

HUNSTEIN, Chief Justice.

Raymond Bunn was indicted in Fulton County on charges of malice murder, felony murder, aggravated assault and violating his oath as a public officer by committing murder, felony murder and aggravated assault. These charges arose out of the shooting death of Corey Ward by Bunn, which occurred while Bunn was an Atlanta Police Department officer on patrol. After his indictment, Bunn filed a motion for immunity from prosecution under OCGA § 16-3-24.2[1] on the basis that he reasonably believed his actions in shooting Ward were necessary to prevent imminent death or great bodily injury to himself or his partner[2] pursuant to OCGA § 16-3-21 (a).[3]

The original trial judge, stating that she could not "determine as

---

[1] OCGA § 16-3-24.2 provides that "[a] person who uses threats or force in accordance with Code Section 16-3-21, 16-3-23, 16-3-23.1, or 16-3-24 shall be immune from criminal prosecution therefor [with an exception inapplicable here]."

[2] Bunn's assertion that his actions in shooting Ward were necessary to prevent imminent death or great bodily injury to himself or his partner distinguishes this case from *Tennessee v. Garner*, 471 U. S. 1 (105 SC 1694, 85 LE2d 1) (1985), cited by the dissent, in which the United States Supreme Court addressed the use of deadly force by police officers for the purpose of *apprehending* nonviolent fleeing felony suspects. Even in preventing escape, however, the United States Supreme Court recognized that

[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given. As applied in such circumstances, the Tennessee statute would pass constitutional muster.

Id. at 11-12 (II) (B).

[3] OCGA § 16-3-21 provides:

(a) A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily

a matter of law that [Bunn] was justified in killing" Ward, denied the motion. Bunn appealed this and other rulings to this Court. In *Bunn v. State*, 284 Ga. 410 (3) (667 SE2d 605) (2008), we held that a defendant need only prove he is entitled to immunity under OCGA § 16-3-24.2 by a preponderance of the evidence. Because the wrong standard had been used, we remanded the case to the trial court to allow it to analyze Bunn's motion under the preponderance of the evidence standard. *Bunn v. State*, supra. On remand, the case originally handled by Judge Lane was reassigned. The trial court subsequently entered an order in which it stated that, after reviewing the record, it adopted Judge Lane's findings of fact and that, after applying the preponderance standard in *Bunn v. State*, supra, it found Bunn carried his burden of proof and granted his motion for immunity from prosecution. By so ruling, the trial court in effect dismissed the entire indictment. See *State v. Yapo*, 296 Ga. App. 158 (1) (674 SE2d 44) (2009) (grant of immunity from prosecution is in substance a dismissal of the pertinent counts of the indictment). The State appeals. See OCGA § 5-7-1 (a) (1); *State v. Burks*, 285 Ga. 781 (684 SE2d 269) (2009).

The State asserts that the trial court erred by granting Bunn's immunity motion because justification was not shown by a preponderance of the evidence. The same record was before this Court in *Bunn v. State*, supra, in which we stated that

> [t]he record shows that, on July 14, 2002, Bunn, a City of Atlanta police officer, was on routine patrol with his partner. Upon spotting an apparent vehicle break-in, the officers moved their vehicle so as to block one of the exits from the parking lot where the break-in was allegedly taking place. The alleged burglar jumped into a van, which began to move toward the officers, who were shouting for it to stop. The van continued toward the officers, and Bunn shot and killed the van's driver, Corey Ward.

Id., 284 Ga. at 410.[4] The State does not deny that Bunn adduced evidence that supported the above sequence of events, which are also found in Judge Lane's order. Based on these findings of fact, the trial court expressly found that Bunn

---

harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

[4] In considering this appeal, we have reviewed the record and transcript filed in this Court as part of this earlier proceeding.

reasonably would have held the perception that the driver of the vehicle would not stop, and that he posed an imminent threat to his life and physical well-being. The only effective means [Bunn] had to attempt to stop or pre-empt the danger was his weapon. [Bunn] fired his service weapon in his own self-defense at the driver and was justified in doing so.

The State argues that the trial court was not authorized to reject Judge Lane's conclusion that the evidence did not show justification because Judge Lane heard the actual testimony of the witnesses and noted in her order that certain conflicting fact questions remained. As to the actual testimony of the witnesses, the trial court expressly adopted those factual findings that were made by Judge Lane in her order. As to the evidentiary conflicts regarding certain matters noted by Judge Lane, aside from the fact that most of them were irrelevant to an assessment of Bunn's claim of immunity from prosecution based on a justification defense,[5] those conflicts were assessed in light of Judge Lane's improper legal conclusion that Bunn was required to prove "as a matter of law" that he was justified in killing Ward. That error by Judge Lane was corrected when this Court held in *Bunn v. State*, supra, that the proper standard of review was the preponderance of the evidence. Id., 284 Ga. at 413 (3).

"Preponderance of evidence" means that superior weight of evidence upon the issues involved, which, while not enough to free the mind wholly from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other.

OCGA § 24-1-1 (5). Nothing in this standard requires the elimination of all fact disputes as a matter of law. Rather, "[t]he standard requires only that the finder of fact be inclined by the evidence toward one side or the other." *Murray v. State*, 269 Ga. 871, 873 (2) (505 SE2d 746) (1998).

---

[5] E.g., although Judge Lane noted that fact questions remained as to the "intent [of Bunn or Ward] as they chose their respective paths that night," the law is well-established that the subjective intent of a defendant is irrelevant to the assessment of a claim of justification. See *Lewis v. State*, 270 Ga. 891, 893 (2) (515 SE2d 382) (1999) (justification defense assessed on whether circumstances would have "excited the fears of an objective reasonable person"). Likewise, fact questions regarding what the occupants of the Tahoe knew and what Bunn's partner (who admitted he tripped over a curb, fell and completely missed what occurred during the pertinent time period) may or may not have seen clearly have no relevance under the facts in this case to a determination whether Bunn himself reasonably believed at the time he fired his service weapon that his action was necessary to prevent death or great bodily injury to himself or his partner. OCGA § 16-3-21 (a).

On appeal of an order denying a motion for immunity from prosecution,

> we review the evidence in the light most favorable to the trial court's ruling, and we accept the trial court's findings with regard to questions of fact and credibility if there is any evidence to support them. [Cit.]

*Mullins v. State*, 287 Ga. 302 (1) (695 SE2d 621) (2010). See also *State v. Yapo*, supra, 296 Ga. App. at 159-160 (2). Based on the facts set forth above, the trial court's determination that Bunn is immune from prosecution because he acted in self-defense in discharging his service weapon, although based upon conflicting evidence, was supported by a preponderance of the evidence. Accordingly, the trial court did not err by granting Bunn's immunity motion.

*Judgment affirmed. All the Justices concur, except Benham, J., who dissents.*

BENHAM, Justice, dissenting.

On the night of July 14, 2002, Raymond Bunn, a plain clothes police officer who was patrolling an Atlanta neighborhood in an unmarked vehicle, fired fatal shots into the driver-side window of a Chevy Tahoe twice wounding its driver, 19-year-old Corey Ward, an African-American male, on the left side of his head. Those facts are certain. Otherwise, the evidence is conflicting as to where Bunn was standing in relation to the Chevy Tahoe Ward was driving;[6] how fast Ward's vehicle was moving;[7] and whether Ward and his passengers knew Bunn and his partner were police officers.[8] There are also discrepancies with Bunn's incident report in which he alleges his knee was "pinned" by Ward's vehicle. Specifically, there is no physical or medical evidence of any injury to Bunn's knee, and Bunn's partner did not actually see Bunn being hit by Ward's vehicle. There is also troubling evidence that Bunn previously used

---

[6] There was disagreement among the experts who testified as to where Officer Bunn was standing in relation to the Tahoe based on the physical evidence. It was disputed as to whether the officer was in front or to the front-side of the Tahoe when the first shot was fired and whether he was flush with the center of the driver-side window when the second shot was fired.

[7] There were differing estimates on the speed of the vehicle. Experts testified that it was either traveling 10 to 26 miles per hour, 10 to 15 miles per hour, or 5 to 12 miles per hour.

[8] A witness testified that Bunn's partner was wearing a flannel shirt, jeans, and a police badge hanging from his neck; however Bunn's partner testified that he was wearing green cargo pants, a green shirt, and a badge around his neck. Bunn's partner testified that Bunn was wearing jeans, a black shirt with a silver embroidered shield on the front and with the words "Atlanta Police" on the back, and a badge around his neck. Eyewitnesses who were in the Tahoe gave conflicting statements as to whether Bunn and his partner identified themselves as police officers and whether the occupants of the Tahoe saw the badges.

excessive force for which he was found civilly liable for damages stemming from an incident in which he punched a woman in the face during a routine traffic stop.

The first judge, who listened to the live testimony and presentation of evidence, determined that Officer Bunn was not entitled to immunity based on the evidence presented. On remand, the second judge, who was not privy to the live presentation of evidence and who was given direction by this Court to apply a preponderance of the evidence standard, found that Officer Bunn was justified in using lethal force against Ward and, therefore, immune from prosecution for Ward's death under OCGA § 16-3-24.2. I find the conflicting evidence and conflicting outcomes troubling in this pre-trial matter and cannot in good faith join the majority's decision to affirm this latest ruling by the trial court. Not only does the affirmation of the trial court's decision deprive Corey Ward's family of their day in court and the citizens of a public trial of this controversy, but this decision will also make it more difficult to prosecute law enforcement officers who are alleged to have used excessive and/or deadly force in the apprehension of suspected criminals.

OCGA § 16-3-24.2 is seemingly applicable to any ordinary citizen walking the streets who may need to defend himself or herself in certain situations. Police officers, however, are not the typical "objective reasonable persons," as suggested by the majority's reference to *Lewis v. State*, 270 Ga. 891, 893 (2) (515 SE2d 382) (1999). Police officers receive special knowledge and training (i.e., training on weaponry, tactics, and the use of deadly force) to which the everyday person is likely not exposed. In addition, police officers are not treated as ordinary suspects when they use deadly force against suspected criminals. Here, the investigating officer admitted that Bunn was not treated as any other homicide suspect, but as a police officer regarding a police-involved shooting.[9] The United States Supreme Court has ruled that the use of deadly force *by the police* during the apprehension of a suspect *must* be reviewed pursuant to reasonableness standards under the Fourth Amendment. *Tennessee v. Garner*, 471 U. S. 1, 7 (105 SC 1694, 85 LE2d 1) (1985).

---

[9] The investigating officer testified as follows:

Q: When you got the statement from the officer, did you get the statement from the officer as police officer Raymond Bunn, or did you get the statement from the officer as criminal homicide suspect, Raymond Bunn?

A: Officer Bunn.

Q: So you took his statement as a police officer?

A: Yes.

Q: He was not a suspect in a homicide; is that correct?

A: Correct.

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.

Id. at 11. See also *Graham v. Connor*, 490 U. S. 386, 394-395 (109 SC 1865, 104 LE2d 443) (1989). Thus, the overarching question at issue is what would a reasonable *police officer* do in a situation where, as here, the only suspected crime in progress is the attempted theft of a car and/or the property therein (a nonviolent felony). See *Robinson v. State*, 221 Ga. App. 865, 866 (473 SE2d 519) (1996) (the police are not ordinary citizens when acting in the line of duty). See also Geoffrey P. Alpert, *How Reasonable is the Reasonable Man?: Police & Excessive Force,* 85 Crim. L. & Criminology 481, 486-487 (1994) (noting that model policy from International Association of Chiefs of Police would ask what a reasonable police officer would do). It does not appear the trial court at any point considered or applied the dictates of *Tennessee v. Garner.*

Given the amount of conflicting evidence in this case concerning whether deadly force was necessary, the conflicting rulings by two trial court judges evaluating the same evidence, Officer Bunn's failure to testify when he had the burden of proof as to why he was justified in using deadly force, and the failure to consider United States Supreme Court precedent, I do not believe there has been a showing that the officer acted as a reasonable police officer under the Fourth Amendment or was justified in his actions by a preponderance of the evidence or any other evidentiary standard. Moreover, allowing the outcome of this case to stand necessarily ensures that alleged victims of excessive or deadly force by law enforcement will be unable to sustain criminal recourse in Georgia courts.[10] Accord-

---

[10] The police ... have not been treated equally by state criminal law. Police are rarely prosecuted, in part because fellow officers are reluctant to vigorously pursue investigations of their comrades' misconduct, often following a code of silence that frustrates factual development. Prosecutors also find themselves in a difficult position when faced with an accusation of police misconduct. They work closely with police, and their ability to succeed in their everyday tasks of prosecuting routine crimes depends on the work and cooperation of police officers. When they are asked

ingly, I would reverse and allow the criminal case to proceed and the matter be tried before a jury.

DECIDED SEPTEMBER 20, 2010 —
RECONSIDERATION DENIED OCTOBER 18, 2010.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker, Attorney General,* for appellant.
*Manubir S. Arora, Ashleigh B. Merchant,* for appellee.

to prosecute one of these allies, prosecutors face "an impossible conflict of interest between their desire to maintain working relationships and their duty to investigate and prosecute police brutality."
John Jacobi, *Prosecuting Police Misconduct,* 2000 Wisconsin Law Review 789, 803-804 (2000).