S13A0083, S13A0084. SIFUENTES v. THE STATE (two cases).
(746 SE2d 127)

HUNSTEIN, Chief Justice.

Brothers Gerardo and Eduardo Sifuentes were jointly indicted, tried, and convicted of malice murder and related offenses in connection with a shooting that caused the death of Eduardo Delgadillo and injured Mauricio Medina and Elijah Espinoza. Both Appellants appeal the denial of their respective motions for new trial, asserting insufficiency of the evidence, evidentiary error, and trial counsel ineffectiveness. Gerardo also challenges the trial court's denial of his motion for pretrial immunity based on self-defense. We find no error, except with respect to Eduardo's conviction for theft by taking, which was not supported by the evidence, and his convictions on two additional counts predicated on the theft by taking. We therefore affirm the judgment against Gerardo in its entirety, and we affirm in part and reverse in part the judgment against Eduardo.[1]

Construed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. Appellants are both members of a street gang known as the Nortenos or "Northsiders." Victims Delgadillo, Espinoza, and Medina were all either members of or associated with members of a rival gang, the Surenos or "Southsiders." The site where the shooting occurred, an Austell apartment complex known as Ivy Commons, was located within the Surenos' recognized territory. Approximately two months earlier, Ivy Commons had been the site of a physical altercation between a Norteno group and a Sureno group, during which Eduardo had broken the nose of one of the Surenos. The apartments had also been a regular

---

[1] The shooting occurred on October 4, 2008. In December 2008, a Cobb County grand jury issued a joint indictment charging the Sifuentes brothers each with one count of malice murder (Count 1), three counts of felony murder (Counts 2 through 4), and one count of aggravated assault as to Delgadillo (Count 5); two counts of criminal street gang activity (Counts 6 and 7); one count of theft by taking (Count 8); two counts of aggravated assault as to victims Espinoza and Medina (Counts 9 and 10); and three counts of firearm possession during the commission of a felony (Counts 11 through 13). At the conclusion of a joint jury trial held August 3-8, 2009, Appellants were found guilty on all counts. Each was sentenced to life for the malice murder; the felony murder counts were vacated by operation of law and the count charging the aggravated assault of Delgadillo merged into the malice murder count. In addition to Appellants' life sentences, each was sentenced to ten consecutive years for criminal street gang activity; ten consecutive years for aggravated assault; five consecutive years for each of the three firearm possession counts; and various concurrent terms for the remaining counts. In August 2009, Appellants each filed a timely motion for a new trial, and in August 2011, through new counsel, each amended his motion to assert ineffective assistance of trial counsel. Following a hearing, the trial court denied both motions on August 25, 2011. On August 29, 2011 and September 1, 2011, respectively, Appellants filed their notices of appeal. The appeals were docketed to the January 2013 term of this Court and were thereafter submitted for decision on the briefs.

site of graffiti "tagging," whereby one gang would deface buildings and other visible structures with its symbols, only to be destroyed or replaced by the symbols of the other gang.

On the afternoon of the shooting, tensions had been brewing between the rival gangs over an incident earlier that day in which one of Eduardo's friends, Danny Aleman, had "disrespected" Delgadillo's wife. After hearing about the incident, Delgadillo went to Ivy Commons and confronted Aleman, and the two exchanged heated words. Delgadillo also reported the incident to several of his Sureno friends, who subsequently showed up at the apartment complex.

Eduardo was visiting his girlfriend Maria that day at her mother's home in Ivy Commons. At some point after Delgadillo confronted Aleman, Delgadillo and his friends saw Eduardo outside one of the apartment buildings. Eduardo began taunting his rivals with gang gestures; Delgadillo and his group responded with their own gang gestures, and one of the Surenos punched Eduardo in the face. Maria intervened, and Eduardo retreated to Maria's mother's apartment. Eduardo telephoned his older brother, Gerardo, related what had happened, and asked Gerardo to come to the apartment complex and to bring a gun. Jairo Ramos, a houseguest of Maria's mother, overheard Eduardo's end of the phone conversation.

Gerardo, who was at the home of his friend Larry Hulsey at the time, took a loaded 12-gauge shotgun from Hulsey's shed without Hulsey's permission or knowledge and drove to Ivy Commons. In the meantime, Ramos reported to the Sureno group that Eduardo had called someone to come over with a gun. Delgadillo asked one of his companions, Francisco Lopez, to retrieve a pistol from Delgadillo's car.

Gerardo arrived and was greeted at his car by Eduardo and Aleman. Aleman testified that, while standing at the car, Eduardo told him that he should run "if you hear the first shot." Tensions continued to mount, and women associated with the two groups began yelling at one another. The groups began advancing toward each other, and Gerardo, who later admitted to police that he was angry at the time, brandished his shotgun. He then fired the gun, fatally striking Delgadillo in the chest and striking Medina in the back and Espinoza in the arm and torso. Lopez testified that he never gave Delgadillo's gun to him because Gerardo opened fire before he had the opportunity. After the shots were fired, Gerardo and Eduardo fled the scene. Three days later, they were arrested.

In an initial statement to police, Gerardo denied being present when the shooting occurred, but he changed his story after he was informed that several eyewitnesses had identified him as the shooter. In his subsequent statement, he maintained he had fired the gun in

defense of his brother and himself. At trial, Gerardo repeated his self-defense claim, testifying that he had fired his weapon only after he saw Delgadillo reach for his waistband and after having warned the Sureno group to back up. Other witnesses testified at trial, however, that Delgadillo implored Gerardo not to shoot because there were children among the Sureno group, and that Gerardo responded, "I don't give a f—," just before pulling the trigger. In addition, the lead detective testified that Gerardo had made no mention in his pretrial statements of seeing Delgadillo reach for his waistband. Forensic evidence placed Delgadillo approximately 24 to 27 feet away from where Gerardo fired the fatal shot.

Officer Edward Campuzano, a member of the Cobb Anti-Gang Enforcement Unit, testified regarding the Norteno-Sureno gang rivalry and confirmed that a search of Appellants' residence had turned up various gang-related items. In addition, the jury was shown amateur video recordings depicting Appellants and various images of gang-related graffiti, gang colors, and gang hand signs, and references to "scraps," a derogatory term for Surenos. In one of these videos, Eduardo made reference to killing Surenos.

1. Despite both Appellants' arguments to the contrary, the evidence as set forth above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Appellants were guilty, either as principal or accomplice, of all the crimes of which they were convicted, with the exception of three counts against Eduardo. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); see also OCGA § 16-2-20 (parties to a crime). While Gerardo maintains he acted in defense of himself and his brother, " '[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (Citation omitted.) *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009). See also *Baldwin v. State*, 263 Ga. 524 (2) (435 SE2d 926) (1993) (though defendant adduced evidence he was acting in self-defense, jury not required to draw this conclusion where State presented evidence suggesting otherwise). Although the evidence is unclear on whether Eduardo was standing in Gerardo's vicinity at the time the shots were fired, his exhortation to his brother to come to Ivy Commons with a gun, his warning to Aleman shortly before the shooting to run if shots were fired, and his history of threats and violence against his rivals all support his culpability as a party to the shooting committed by Gerardo. See *Bolden v. State*, 278 Ga. 459 (1) (604 SE2d 133) (2004) (evidence sufficient to support accomplice liability where defendant instigated and encouraged shooting in retaliation for prior incident).

The evidence was insufficient, however, to establish Eduardo's culpability for theft by taking, as there was no evidence that Eduardo

encouraged Gerardo to steal Hulsey's gun or had any knowledge that his brother had done so. Eduardo's conviction and sentence on Count 8, therefore, must be reversed. In addition, because Count 7 (the second of two criminal street gang activity counts) was predicated on the underlying crime of theft by taking, Eduardo's conviction and sentence on that count must also be reversed.[2]

2. Gerardo also claims that the trial court erred by denying his pretrial motion for immunity under OCGA § 16-3-24.2.[3] In reviewing the denial of a motion for pretrial immunity, we must view the evidence in the light most favorable to the trial court's ruling and accept the trial court's findings of fact and credibility determinations if there is any evidence to support them. *State v. Bunn*, 288 Ga. 20 (701 SE2d 138) (2010). In his motion for immunity, Gerardo claimed that he was justified in using deadly force in defense of himself and Eduardo. See OCGA § 16-3-21 (a) (deadly force justified only if defendant "reasonably believes that such force is necessary to prevent death or great bodily injury to himself . . . or a third person or to prevent the commission of a forcible felony"). To prevail on his immunity motion, Gerardo was required to establish his justification defense by a preponderance of the evidence. *Bunn v. State*, 284 Ga. 410 (3) (667 SE2d 605) (2008). Having reviewed the transcript from the pretrial immunity hearing under the above standards, we find no error in the trial court's denial of pretrial immunity.

Viewed most favorably to the trial court's ruling, the evidence at the pretrial hearing showed a history of rivalry between the Norteno and Sureno gangs; Appellants' affiliation with the Nortenos; and prior difficulties between Eduardo and members of the Surenos. The evidence further reflected that Gerardo was summoned to come to Ivy Commons by his brother in response to being punched in the face by a Sureno affiliate, and that he brought a 12-gauge shotgun, which

---

[2] Though Count 4, the third of three felony murder counts, was predicated on the offense in Count 7, on which we are reversing, that conviction has already been vacated by operation of law. See note 1, supra.

[3] In *Eason v. State*, 261 Ga. App. 221 (2) (582 SE2d 194) (2003), the Court of Appeals held, without analysis or citation of authority, that appellate review of a pretrial ruling denying a motion for immunity under OCGA § 16-3-24.2 is unavailable after the jury rejects the defendant's justification defense at trial. That holding is contrary to OCGA § 5-6-34 (d), which generally allows a defendant to appeal any interlocutory order in his case as part of the direct appeal of the final judgment in the case, even if he could have sought an interlocutory appeal. Moreover, while the trial court's pretrial immunity ruling and the jury's verdict on a claim of self-defense may apply the same statutory justification standard, the court's ruling must be based solely on the evidence presented at a pretrial hearing, while the jury's verdict must be based solely on the evidence presented at trial, which may be considerably different. Accordingly, we have overruled that portion of *Eason* in our decision today in *Hipp v. State*, 293 Ga. 415 (746 SE2d 95) (2013).

was later found to have fired the fatal bullet. After arriving at the apartments, Gerardo saw one member of the group with a gun, but never saw it being pointed at him or his brother. Gerardo admitted to being "heated up" over the attack on Eduardo. At the time Gerardo opened fire, the Surenos were some measurable distance away from him, the person with the gun had disappeared to the back of the Sureno group, and Gerardo saw no other weapons. The evidence thus supported a finding that the shooting was motivated by gang rivalry and a desire for revenge, rather than self-defense. See *Ucak v. State*, 273 Ga. 536 (4) (544 SE2d 133) (2001) (defendant not justified in committing assault to avenge past wrongs). The trial court thus did not err in concluding that Gerardo had not carried his burden to prove justification so as to entitle him to immunity.

3. Appellants contend that the trial court erred by admitting over objection the video recordings, seized from the brothers' home in a police investigation prior to the crimes at issue here, depicting gang-related images and activities. Both Appellants contend these recordings were more prejudicial than probative and that the trial court thus erred in admitting them. We disagree. In order to prove the offense of criminal street gang activity, see OCGA § 16-15-4, the State was required to prove the existence of a criminal street gang, which "may be established by evidence of a common name or common identifying signs, symbols, tattoos, graffiti, or attire or other distinguishing characteristics." OCGA § 16-15-3 (2). The videotapes at issue here were relevant in proving both the existence of the Norteno gang and Appellants' affiliation with it, essential elements of the street gang crimes which the State was required to prove beyond a reasonable doubt. The fact that the videos were made approximately two years prior to the crimes at issue goes to their evidentiary weight and does not render them inadmissible. See *Hinton v. State*, 280 Ga. 811 (6) (631 SE2d 365) (2006) (remoteness of evidence generally goes to its credibility, not its admissibility). The trial court did not abuse its discretion in admitting the videos. See id. at 816 (4) (abuse of discretion standard in reviewing evidentiary rulings).

4. Appellants both claim they received ineffective assistance of counsel. To establish ineffective assistance of counsel, Appellants must show that trial counsel's performance was professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355 (3) (689 SE2d 280) (2010). If Appellants fail to satisfy either the "deficient performance" or the "prejudice" prong of the *Strickland* test, this Court is not required to examine the other. See *Green v. State*, 291 Ga. 579 (2) (731 SE2d 359)

(2012). Because Eduardo and Gerardo were represented by different trial attorneys, we address each Appellant's claim independently.

(a) Gerardo contends that his trial counsel provided ineffective assistance by failing to supplement the record with unredacted versions of Appellants' statements to police. At trial, pretrial statements made to police by both Eduardo and Gerardo were admitted in evidence. Both statements had been redacted to exclude each brother's references to the other under *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968) (admission of one co-defendant's statement inculpating another co-defendant violates the latter's right of cross-examination). Gerardo asserts that, once the decision was made that he would testify, his trial counsel should have moved to supplement the record with the unredacted version of Gerardo's statement, which would have corroborated the testimony in support of his justification defense.

At the motion for new trial hearing, Gerardo's counsel testified that no decision on whether Gerardo would testify was made until after the State had presented its case, so that the *Bruton* issue remained salient until that point. Once Gerardo had testified, trial counsel explained, he consciously chose not to offer the unredacted statement. Counsel testified that there were minor discrepancies between Gerardo's unredacted pretrial statement and his trial testimony, which counsel feared could damage Gerardo's credibility in the jury's eyes. Because he believed Gerardo had made a credible case for self-defense through his live testimony, counsel opted not to supplement the record, believing the risks of doing so outweighed the benefits. This type of decision-making is classic trial strategy, to which this Court must be highly deferential. See *Boyd v. State*, 275 Ga. 772 (3) (573 SE2d 52) (2002). Because counsel's strategic decision was reasonable, we find no deficient performance in this respect.

Gerardo also claims that trial counsel rendered ineffective assistance in failing to move to sever his trial from Eduardo's. Gerardo's trial counsel testified that he and Eduardo's trial counsel had discussed the possibility of seeking severance and had decided against it, recognizing that the brothers' defenses were not antagonistic and therefore that a severance would not likely be granted. See *Bolden*, 278 Ga. at 461 (2) (severance warranted only when defendant clearly shows "that joinder will result in prejudice and a denial of due process"). Again, this decision constituted reasonable trial strategy, which this Court is bound to affirm. See *Jackson v. State*, 281 Ga. 705 (6) (642 SE2d 656) (2007) (failure to seek severance constituted reasonable trial strategy). Accordingly, Gerardo's ineffectiveness claims must fail.

(b) Like Gerardo, Eduardo contends that his counsel rendered ineffective assistance by failing to request admission of the unredacted version of Gerardo's statement and failing to seek severance. Regarding Gerardo's statement, Eduardo's trial counsel testified that he did not discern much benefit in offering the unredacted version, because he believed Gerardo's live testimony adequately presented the justification defense. Regarding severance, Eduardo's counsel testified that "as a strategy, we wanted to be linked with Gerardo," because Gerardo, as opposed to most of the State's witnesses, appeared humble and respectful and "made a good witness." In other words, counsel believed that a joint trial would work to Eduardo's benefit. Because these strategic determinations were objectively reasonable, Eduardo has failed to establish his trial counsel performed deficiently, and his ineffectiveness claims must fail. See *Jackson*, 281 Ga. at 707 (6); *Boyd*, 275 Ga. at 776 (3).

*Judgment affirmed in Case No. S13A0083. Judgment affirmed in part and reversed in part in Case No. S13A0084. All the Justices concur.*

DECIDED JULY 11, 2013.

*Louis M. Turchiarelli, Nicholas G. Dumich*, for appellants.

*D. Victor Reynolds, District Attorney, Jesse D. Evans, John R. Edwards, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kenneth W. Mishoe, Assistant Attorney General*, for appellee.