**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 5, 2017**

# In the Court of Appeals of Georgia

A17A1151. AUSTIN v. THE STATE.

RICKMAN, Judge.

Gordon Austin appeals the lower court's denial of his petition to seal records pursuant to OCGA § 42-8-62.1, Georgia's statute limiting public access to first offender records in the custody of the clerk of court. Finding no error in the trial court's judgment, we affirm.

The record reflects the following. On August 6, 2009, in the Superior Court of Carroll County, Austin, a dentist, entered a negotiated plea of guilty pursuant to

*North Carolina v. Alford*[1] and Georgia's first offender law, OCGA § 42-8-60[2] et seq.,

to six misdemeanor counts of theft by taking in connection with alleged fraudulent

billing of the State of Georgia Medicaid program. Austin was sentenced to serve 5

years on probation. In April 2012, Austin filed a motion for early termination of his

probation. The record reflects that in June 2012, the lower court entered an order

granting his motion, and terminating his probation, "as of June 8, 2012." On August

18, 2016, the lower court entered an "Order of Discharge," which contained a

handwritten notation of "nunc pro tunc the 8th of June, 2012." That document

ordered and directed that, "in accordance with the provisions of the . . . First-

Offenders Act," Austin be discharged without court adjudication of guilt; the

---

[1] 400 U. S. 25 (91 SCt 160, 27 LE2d 162) (1970) (trial court did not commit constitutional error in accepting a guilty plea despite the accused's claim of innocence where there was strong evidence of guilt that negated the claim of innocence and there was evidence that the accused intelligently concluded that he should plead guilty).

[2] Pursuant to OCGA § 42-8-60 (2009), Georgia's first offender law, "for a defendant without prior felony convictions, a court may defer entering a judgment of guilt and place the defendant on probation or in confinement." (Citation and punctuation omitted.) *Graydon v. State*, 313 Ga. App. 580, 580-581 (722 SE2d 173) (2012). After a defendant who has been sentenced as a first offender under this statute either completes the terms of his or her probation, receives early termination of his or her probation by the court, or is released from confinement, he or she shall be exonerated of guilt and shall stand discharged as a matter of law. See OCGA § 42-8-62 (a) (2009) .

discharge shall completely exonerate Austin of any criminal purpose, not affect any of Austin's civil rights or liberties, and not be used to disqualify Austin in any application for public or private employment or appointment to office; and Austin shall not be considered to have a criminal conviction.

On July 13, 2016, Austin filed a petition to seal his records pursuant to OCGA § 42-8-62.1 (d). OCGA § 42-8-62.1 (c) and (d) provide as follows.

(c) An individual who has been exonerated of guilt and discharged pursuant to this article, including those individuals exonerated of guilt and discharged prior to July 1, 2016, may petition the court that granted such discharge for an order to seal and make unavailable to the public the criminal file, docket books, criminal minutes, final record, all other records of the court, and the defendant's criminal history record information in the custody of the clerk of court, including within any index. Notice of such petition shall be sent to the clerk of court and the prosecuting attorney. A notice sent by registered or certified mail or statutory overnight delivery shall be sufficient notice.

(d) Within 90 days of the filing of a petition pursuant to subsection (c) of this Code section, the court shall order the criminal file, docket books, criminal minutes, final record, all other records of the court, and the defendant's criminal history record information *in the custody of the clerk of court*, including within any index, to be sealed and made unavailable to the public if the court finds *by a preponderance of the evidence that*: (1) An exoneration of guilt and discharge has been

granted pursuant to this article; and (2) *The harm otherwise resulting to the privacy of the individual outweighs the public interest in the criminal history record information being publicly available.*

(Emphasis supplied.)

In the petition to seal his records, Austin claimed that in June 2016, the clerk of the Carroll County Superior Court transmitted to a media news organization copies of the accusation and plea agreement which did not contain "any designation or markings relating to [his] First Offender discharge or any other statutorily prescribed language to indicate exoneration of guilt or discharge," and that "[s]ubsequently, these transmitted documents were published online and reports of [his] 'guilt' in relation to these charges have been widely promoted by various media outlets . . . . [and] has resulted in direct and continuing harm to [his] reputation and privacy."[3] According to the article that Austin attached to his petition, news about the theft plea

---

[3] Although this Court has recognized that an order of discharge and exoneration is not required, see *Collins v. State*, 338 Ga. App. 886, 891 (3), n. 12 (792 SE2d 134) (2016), we note that the clerk of court allegedly disseminated documents from Austin's theft case on July 7, 2016, which date was *before* the trial court had entered an order of discharge, on August 18, 2016, albeit "nunc pro tunc the 8th of June, 2012." Notwithstanding the foregoing, in this opinion, we are not called upon to make, nor do we make, any determination as to any culpability of the clerk for the acts alleged.

4

surfaced after Austin had been selected as a delegate to represent the state at a certain political party convention. In his petition, Austin asserted that "[t]he public dissemination of this information has caused and continues to cause personal and professional damage to Defendant-Petitioner, by interfering with his ability to practice dentistry and creating a negative public image through media publication." He claimed that "[t]he public interest in [his] criminal history record information being publicly available is negligible, if any. . . . [and] is far better served by the sealing of [his] record." Austin asserted that the purpose of the first offender statute is to "protect the first offender from the stigma of having a criminal record with regard to the crime for which the defendant was given first offender treatment," and he requested that all records relating to the theft case be sealed on the basis that he was granted an exoneration of guilt and a discharge.

The same judge who had accepted Austin's plea denied the petition, concluding that Austin's "profession is one of such public trust, that his interest in having these documents sealed is far outweighed by the public's interest in having the records available." The lower court also ordered the clerk of court to, in accordance with the law, "stamp all documents in this case, as well as any in the future" with a specified notation of discharge and exoneration, and a statement that the "defendant shall not

5

be considered to have a criminal conviction." See current version of OCGA § 42-8-60 (h); OCGA § 42-8-62 (a) (2009).

On appeal, Austin contends that the lower court erred in the foregoing determination because it is contrary to public policy, recent amendments to pertinent statutes, and the primary purpose of OCGA § 42-8-62.1, and it "create[s] a legal absurdity" when his own interest in restricting access to the record outweighs the interest of the professional licensing board, which board, he claims, is precluded by statute from considering applicants' misdemeanor conviction records obtained from the Georgia Crime Information Center. We are not persuaded.

First, even assuming that the professional licensing board is precluded by statute from considering Austin's first offender misdemeanor record in its determination to issue or revoke his dentistry license,[4] we reject Austin's contention that the lower court's judgment "create[s] a legal absurdity" in the instant case on the basis that his own interest in restricting access to the record outweighs the interest of the professional licensing board. The interests of the professional licensing board do not control the lower court's determination whether to seal records of the clerk's

---

[4] Compare OCGA § 43-1-19 (q) (1) and OCGA § 43-1-19 (a) (2). See generally §§ 43-1-24, 14-7-2.

office, in the public interest. Second, although it is true as Austin asserts that "in construing statutes, the courts must try to effectuate the intent of the legislature," this Court has recognized that "that does not mean that the Court is permitted to rewrite statutes to promote policies that are not expressed in that legislation . . . . We are bound to effectuate the intent of the legislature as expressed in the words and language of the text that the legislature has deemed to enact." (Citations, footnote, and punctuation omitted.) *Nasir v. Gwinnett County State Court*, 341 Ga. App. 63, 69 (798 SE2d 695) (2017) (special concurrence). Here, because "the plain language of the text of the statute is only susceptible to one reasonable interpretation, [the lower] court [had no] need [to] resort to other rules of construction," (Citation omitted.) Id. at 68, and was required to "construe the statute according to its terms." (Citation and punctuation omitted.) Id. at 67.

OCGA § 42-8-62.1 (d) pertinently requires a court to order the sealing of all criminal documents and records that are in the custody of the clerk of court, if the court finds "by a preponderance of the evidence" that the defendant has been exonerated of guilt and discharged from a first offender sentence and "[t]he harm otherwise resulting to the privacy of the individual outweighs the public interest in the criminal history record information being publicly available." "Medicaid is a

7

federal-state program under which the federal government provides financial assistance to states to enable them to provide medical care to needy individuals." (Footnote omitted.) *Toal v. Dekalb Medical Center*, 247 Ga. App. 349, 350 (542 SE2d 184) (2000). Medicaid patients receive "treatment . . . funded by *public money*." (Emphasis supplied.) *Porter v. Guill*, 298 Ga. App. 782, 786 (1) (681 SE2d 230) (2009). Austin pled guilty to six counts of "knowingly and willfully, and with the intent of depriving the State of Georgia Medicaid program of funds, . . . caus[ing] to be submitted a false claim to the Medicaid program" to receive payment for services he did not perform. The indictment reflects that each count involved a different patient and was committed on a different day, over a span of about five years. A factual basis for the plea was presented to the court at the time the plea was entered, and reflected that the "crime[s] involv[ed] deceit and the theft of public funds," *Malloy v. State*, 329 Ga. App. 38, 40 (1) (763 SE2d 501) (2014) (physical precedent only), on six separate occasions, with regard to the accounts of six different members of the public, and on a continual basis.

The "preponderance of the evidence" standard which applied to the lower court's determination,

means that superior weight of evidence upon the issues involved, which, while not enough to free the mind wholly from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other. . . .[T]he standard requires only that the finder of fact be inclined by the evidence toward one side or the other.

(Citations and punctuation omitted.) *State v. Bunn*, 288 Ga. 20, 22 (701 SE2d 138) (2010). The lower court expressly stated in its order that it had "applied the [requisite] balancing test . . . to determine whether the records of the above-styled case should be sealed."[5] Austin's plea of guilty to repeated violations of public trust in connection with his dental profession authorized the lower court to be inclined by the superior weight of evidence toward allowing the record to be available to the public rather

---

[5] Notably, the lower court was not required to issue written factual findings. When a trial court considers a request to limit public access to first offender sentencing information, both subsections (b) and (d) of OCGA § 42-8-62.1 require that the same balancing test be applied, i.e, weighing the public's interest in the defendant's criminal history record information being publicly available and the harm to the defendant's privacy; but only subdivision (b) requires that the trial court issue written findings of fact upon doing so. Subsection (b) sets forth the procedure for individuals who, at the time of sentencing, seek to limit public access to his or her first offender sentencing information. But it is subsection (d) that controls this case and sets forth the procedure for individuals who have been exonerated of guilt and discharged.

than ordering that the record be sealed.[6] Accordingly, the trial court did not err. See

generally Id. at 23.

*Judgment affirmed. Ellington, P. J., and Andrews, J., concur.*

---

[6] We decline to apply *Meinken v. Burgess*, 262 Ga. 863 (426 SE2d 876) (1993) to this case. In *Meinken*, the statute at issue was OCGA § 35-3-37, and not OCGA § 42-8-62.1 which controls this case.