**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 1, 2018**

# In the Court of Appeals of Georgia

A18A0433. THE STATE v. MORGAN.

PHIPPS, Senior Appellate Court Judge.

After Daniel Morgan was charged with aggravated assault and family-violence battery arising from a chokehold he applied to his pregnant wife, Morgan filed a motion for immunity under OCGA § 16-3-24.2.[1] After a hearing, the trial court granted the motion. On appeal from this judgment, the State argues that the court erred because Morgan cannot have been justified in using force in response to his wife's threat to put the couple's dog out of their house. We agree and reverse.

---

[1] That Code section provides in pertinent part that "[a] person who uses threats or force in accordance with Code Section . . . 16-3-24 [in defense of property other than a habitation] shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person under [OCGA § 16-11-120 et seq., the Georgia Firearms and Weapons Act]."

"To avoid trial based on a justification defense presented at an immunity hearing, 'a defendant bears the burden of showing that he is entitled to immunity under OCGA § 16-3-24.2 by a preponderance of the evidence.'" *Cotton v. State*, 297 Ga. 257, 258 (2) (773 SE2d 242) (2015), quoting *Bunn v. State*, 284 Ga. 410, 413 (3) (667 SE2d 605) (2008). On appeal from a trial court's grant or denial of pretrial immunity, "we review the evidence in the light most favorable to the trial court's ruling, and we accept the trial court's findings with regard to questions of fact and credibility if there is any evidence to support them." *State v. Bunn*, 288 Ga. 20, 23 (701 SE2d 138) (2010) (citation and punctuation omitted); see also *Sifuentes v. State*, 293 Ga. 441, 444 (2) (746 SE2d 127) (2013).

Thus viewed in favor of the trial court's judgment, the record shows that in late 2016, Morgan and his wife Tabitha shared a house in Rome with Tabitha's daughter, born in July 2016, and two dogs – Bella, an 8-pound Japanese Chin, and Pippin, a "big" Great Pyrenees. Morgan considered Bella his dog, but Tabitha took care of both dogs while he was at work during the day. After Morgan learned in late 2016 that he was not the biological father of the daughter, the couple's relationship deteriorated.

On March 29, 2017, Tabitha was four months pregnant with her second child and on doctor's orders of mild bed rest. After Morgan arrived home from work that

evening, the couple began an argument, during which Tabitha told Bella to stop "digg[ing] her claws" into the couple's leather couch. At this, Morgan became upset and told Tabitha "not to tell his dog what to do." When Tabitha asked Morgan to leave the house, he responded that it was his house and that "she could leave." When Tabitha again asked that he leave, he responded that he was "not leaving without my guns and my dog." After Morgan again insisted that he would not leave the house, Tabitha picked up Bella and began to walk toward the front door, saying, "Let's go, Dan, you know. Bella is going with or without you." At this, Morgan exclaimed, "[D]on't touch my f***ing dog," grabbed Tabitha by the hair, jerked her towards him, and placed her in a headlock with the crook of his arm such that she could not speak. When Tabitha struggled, Morgan testified that he "tighten[ed] [his] grip," causing her to see spots in front of her eyes, at which point she lost her hold on the dog and Morgan released her. There was no evidence that the dog was harmed at any time before or during the incident.

The officer responding to Tabitha's 911 call noticed a red mark extending from "the bottom side of her chin on the right side of her face down her neck" towards her collarbone. The officer testified at the hearing that the mark was of a "pretty substantial size" and "had to [have been the result of] some kind of pressure" by

3

"something that was pressed up against her neck," such as "a headlock from behind." Tabitha suffered for some weeks afterward from premature contractions, bleeding, and elevated blood pressure.

Morgan was arrested for family-violence battery and was later charged with aggravated assault as well. He then moved for immunity, arguing that he had been "reasonably defending" his dog Bella against "tortious damage and criminal interference" by the victim. After a hearing, the trial court filed an order finding in relevant part that the victim had threatened to throw the dog out of the house and that in attempting to prevent her from doing so, Morgan had pulled the victim's hair and had "put his arm around [the victim's] neck and beg[u]n to squeeze," rendering the victim "disoriented." The trial court then drew conclusions of law including that, by a preponderance of the evidence, Morgan was "justified to respond with force" to protect the dog; that his use of force, including placing his arm around the victim's neck and squeezing, was "reasonable and justified to prevent severe injury to his dog"; and that Morgan "lacked the intent to commit any crime[.]" The trial court thus concluded that Morgan was entitled to immunity under OCGA § 16-3-24.2.

1. On appeal, the State argues that the court erred in granting Morgan immunity because his use of force against the victim was not reasonable or justified as a matter of law. We agree.

Morgan was charged with family-violence battery for grabbing the victim by the shirt as well as aggravated assault for "placing [his] hands and arms around the neck of" the victim "and squeezing," which was "like[ly] to result in" her "strangulation." Morgan moved for immunity pursuant to OCGA § 16-3-24.2, which provides in relevant part that "[a] person who uses threats or force in accordance with" Code sections including OCGA § 16-3-24, concerning the use of force in defense of property other than a habitation, "shall be immune from criminal prosecution therefor. . . ." OCGA § 16-3-24 provides in relevant part:

> (a) A person is justified in threatening or using force against another when and to the extent that he *reasonably believes* that such threat or force is necessary to prevent or terminate such other's trespass on or other tortious or criminal interference with . . . personal property: (1) [l]awfully in his possession[;] [or] (2) [l]awfully in the possession of a member of his immediate family . . . .

> (b) The use of force which is intended or likely to cause death or great bodily harm to prevent trespass on or other tortious or criminal interference with real property other than a habitation or *personal*

5

*property* is *not* justified *unless the person using such force reasonably believes that it is necessary to prevent the commission of a forcible felony*.

(Emphasis supplied.) And OCGA § 16-1-3 (6) defines a forcible felony as "any felony which involves the use or threat of physical force or violence against any person."

In *Barron v. State*, 219 Ga. App. 481 (465 SE2d 529) (1995), we held that a trial court did not err in denying a defendant's motion for directed verdict under OCGA § 16-3-24 (a) when the evidence showed that the defendant had used "physical force" to recover personal property taken from his car by his estranged wife during his visit to the couple's children at her house. Id. at 482-483. We observed that "the affirmative defense contained in OCGA § 16-3-24 (a) was not available" to the defendant because "the victim's conduct in taking personal property from the lawful possession" of the defendant "was neither tortious [n]or criminal interference within the meaning of the statute." Id. at 482-483. This was so, we said, because "the personal property taken by the victim was not the 'property of another' within the definition provided by OCGA § 16-1-8 (3)[,] which excludes property of a spouse

6

from the definition of this term."[2] Id. at 483. Likewise, we noted, "the victim's conduct is not cognizable as tortious interference" because she was protected by "the doctrine of interspousal tort immunity," with no facts to justify any "deviation from a strict application of the doctrine." Id. For these reasons, we concluded that the estranged husband was, as a matter of law, not entitled to assert the affirmative defense of justification by reason of defense of property. Id.; see also *Mitchell v. State*, 187 Ga. App. 40, 43 (2) (369 SE2d 487) (1988) (a defendant who attacked his mother to prevent his dog from being put outside the house they shared was not authorized to receive any further instruction on justification because "ensuring that one's dog gets to stay inside a house" does not justify the use of force as against "any . . . situation enumerated in OCGA § 16-3-20 et seq.").

Here, it is undisputed that Morgan and the victim were married at the time of the altercation at issue, that they lived in the house where the incident occurred together, and that the victim routinely took care of Bella. Because the victim was entitled to handle the dog, including putting it out of the house, the defense of justification in the use of force for the purpose of resisting the victim's attempt to do

---

[2] OCGA § 16-8-1 (3) defines "property of another" as including "property in which any person other than the accused has an interest," but excludes "property belonging to the spouse of an accused or to them jointly."

7

so was not available to Morgan. According to Morgan's own testimony, moreover, he reacted to the victim's struggling against the chokehold by "tighten[ing his] grip," which was not justified in the absence of evidence that the victim was committing any crime, let alone a forcible felony, concerning the dog. See OCGA § 16-3-24 (b) (barring the use of deadly force against an intrusion on personal property "unless the person using such force reasonably believes that it is necessary to prevent the commission of a forcible felony"); *Mitchell*, 187 Ga. App. at 43 (2). Because there is no evidence to support the conclusion that Morgan was entitled to use force against his wife in order to protect the couple's dog, the trial court erred when it granted Morgan's motion for immunity.

2. Because Morgan was not entitled to a defense of justification in the use of force in defense of personal property, he would not be entitled to a charge on the subject in any subsequent proceedings on charges arising from these facts. *Floyd v. State*, 277 Ga. App. 166, 167 (626 SE2d 149) (2006) (in light of *Barron*, a defendant's request for a charge on justification by reason of defense of property concerning his use of force against his wife to recover the checkbook she took from

his truck should have been denied); *Mitchell*, 187 Ga. App. at 43 (2).

*Judgment reversed. Elllington, P. J., concurs. Bethel, J., concurs specially*.

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

A18A0433. THE STATE v. MORGAN.

BETHEL, Judge, concurring specially.

While the record in this case reflects that the Morgans were less than the picture of domestic bliss, it is clear that they were lawfully married at the time of the events in question. As such, I find no support for the notion that personal property belonging to one spouse can be the subject of a trespass on or other tortious or criminal interference by the other spouse for purposes of the provisions of OCGA § 16-3-24 or, by extension, OCGA § 16-3-24.2. *See* OCGA § 16-8-1 (3); *Barron v. State*, 219 Ga. App. 481, 483 (465 SE2d 529) (1995). In my view, nothing more need be analyzed.

Simply stated you may not strangle or otherwise do violence to your spouse because you object to the manner in which they are handling your personal property and claim the protections of OCGA § 16-3-24.