302 Ga. 129
FINAL COPY

S17A1041.  ARNOLD v. THE STATE.

BLACKWELL, Justice.

Joseph Lamar Arnold was tried by a DeKalb County jury, and he was convicted of the murder of Gerald Osborne and the unlawful possession of a firearm during the commission of a felony. Arnold appeals, contending that the evidence is insufficient to sustain his convictions, that the trial court erred when it denied his motion for pretrial immunity, and that it erred when it limited his voir dire of prospective jurors. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Osborne was killed on July 10, 2014. On October 7, 2014, a DeKalb County grand jury indicted Arnold for malice murder, felony murder, aggravated assault, and the unlawful possession of a firearm during the commission of a felony. Arnold's trial commenced on February 17, 2015, and the jury returned its verdict six days later, finding him not guilty of malice murder, but guilty on all of the other counts. Arnold was sentenced to imprisonment for life for felony murder and imprisonment for a consecutive term of five years for the unlawful possession of a firearm during the commission of a felony. The aggravated assault merged with the malice murder. See Malcolm v. State, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). Arnold timely filed a motion for new trial on March 19, 2015, he amended it on January 11, 2016, and he amended it again on June 17, 2016. The trial court denied the motion for new trial on July 27, 2016, and Arnold timely filed a notice of appeal on August 22, 2016. The case was docketed in this Court for the April 2017 term and orally argued on August 28, 2017.

1. Viewed in the light most favorable to the verdict, the evidence shows that in the early morning hours of July 10, 2014, Arnold, his brother, and six or seven of their friends were in the front yard of the DeKalb County home that Arnold shared with his mother and extended family. Arnold and a friend left the home to purchase beer at a gas station, where they saw Osborne in the company of a woman. Arnold knew Osborne, but they had not spoken in more than a month because of a disagreement involving the woman accompanying Osborne. At the gas station, the two men exchanged words. After Arnold bought beer, his friend drove him back to his house, where they remained with Arnold's brother and the other guests at the gathering in Arnold's front yard.

A few minutes later, Osborne drove up without his female companion and parked his car so that it was blocking Arnold's driveway. Osborne got out of the car, Arnold approached him, and they argued for several minutes in the front yard. While the men argued, Arnold's brother walked up to them and displayed a shotgun. Arnold was carrying two handguns in his back pocket, and he eventually pulled out both handguns and shot Osborne three times in the left leg and buttock after Osborne returned to his car. Although Arnold testified that he shot Osborne only after Osborne grabbed a gun from his car, two of the guests

2

at the gathering in Arnold's front yard testified that they never saw Osborne with a gun. After being shot, Osborne drove off without returning fire, but he died after driving about a tenth of a mile.

At trial, Arnold presented a justification defense, and he principally relied on testimony that the two guests who said they never saw Osborne with a gun were not able to see inside Osborne's car, as well as the fact that Osborne actually had two guns in his car at the time he was shot, including one that was found under his thigh by first responders. Arnold also points to evidence showing that Osborne was aggressive and confrontational both at the gas station and in his front yard and that Osborne was under the influence of alcohol and had traces of cocaine metabolites in his system when he died.

Arnold asserts that the State failed to prove beyond a reasonable doubt that he was not justified in shooting Osborne. But questions about the existence of justification are for a jury to decide, see Crayton v. State, 298 Ga. 792, 793 (1) (784 SE2d 343) (2016), and the jury's determination in this case that the burden was met is supported by the evidence. The jury was able to consider Arnold's credibility, and it was authorized to conclude that he did not reasonably believe that it was necessary to shoot Osborne in order to defend

3

himself. Arnold's claim that he shot Osborne in self-defense was particularly dubious given his apparent uncertainty about exactly what Osborne did that caused him to feel threatened.[2] Instead, the jury was permitted to find that Arnold shot Osborne because, as Arnold testified, Osborne was being "disrespectful" to him "in front of his mama['s] house." Or the jury could have concluded that the shooting had something to do with what Arnold described as a "disagreement . . . concerning a female," especially given Arnold's description of that disagreement as ending his previous friendship with Osborne, the fact that it was the same woman whom Arnold observed at the gas station with Osborne on the morning of the shooting, and Arnold's statement that the video of his confrontation with Osborne at the gas station (which was viewed by the jury) would show "why [he] shot [Osborne]."

The jury also was able to observe one of the eyewitnesses use an overhead monitor to mark the locations and movement of individuals during the confrontation in Arnold's front yard and the other eyewitness describe the

---

[2] Arnold testified that Osborne did not make any verbal threats to him during the confrontation in his front yard, he was "not sure" about whether Osborne was even turned toward him at the time he was shot, and — when describing the particular actions Osborne took that caused him to fear for his life — could only testify that "I believe when he grabbed the gun [off the front seat] — because he motioned towards me, I shot him."

locations and distances between those individuals by comparing them with the locations and distances between individuals inside the courtroom. The jury could have relied on this testimony to reject Arnold's claims about Osborne's conduct in general[3] and specifically his claim that Osborne was the aggressor (especially considering the testimony that Arnold's brother was standing by him with a loaded shotgun during the confrontation with Osborne). The jury was charged that the State had the burden of proving beyond a reasonable doubt that Arnold was not justified in killing Osborne, and the evidence was sufficient for it to do so.[4] See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); Shaw v. State, 292 Ga. 871, 872 (1) (742 SE2d 707) (2013).

2. Before trial, Arnold filed a motion for immunity from prosecution under OCGA § 16-3-24.2. Following a hearing, the trial court denied Arnold's motion,

---

[3] For example, one witness testified that she could not see inside the car because it was dark and she was too far away, but the jury could have found that the vantage point from her location was comparable to Arnold's (who also gave equivocal testimony about exactly what Osborne was doing when he returned to the car). And the other witness testified that she could not see inside the car, but also that Osborne was "sitting in the car" at the time he was shot, which could indicate that she had at least some ability to see what Osborne was doing at the time he was shot.

[4] We note that not only did the jury find that the State had met this burden, the trial judge, who also was able to gauge the credibility of the witnesses, came to the same conclusion when Arnold asked her to sit as a "thirteenth juror" pursuant to OCGA §§ 5-5-20 and 5-5-21.

finding that he failed to meet his burden of showing by a preponderance of the evidence that he reasonably believed himself to be in imminent danger of being subjected to unlawful force (of the type described in OCGA § 16-3-21 (a)[5]) when he shot Osborne. See Bunn v. State, 284 Ga. 410, 413 (3) (667 SE2d 605) (2008). Arnold claims that the trial court erred when it found that he failed to meet this burden. But "[i]n reviewing the denial of a motion for pretrial immunity, we must view the evidence in the light most favorable to the trial court's ruling and accept the trial court's findings of fact and credibility determinations if there is any evidence to support them." Sifuentes v. State, 293 Ga. 441, 444 (2) (746 SE2d 127) (2013). The evidence presented at the immunity hearing was substantially identical to the evidence presented at trial, and the trial court was authorized to find that Arnold failed to meet his burden of showing that he was entitled to immunity under OCGA § 16-3-24.2.[6]

---

[5] OCGA § 16-3-21 (a) provides that deadly force is justified if the defendant "reasonably believes that such force is necessary to prevent death or great bodily injury to himself . . . or a third person or to prevent the commission of a forcible felony."

[6] Several statements made by the trial court during the immunity hearing suggest that it was under the mistaken impression that, even if Arnold reasonably believed himself to be in imminent danger of being subjected to unlawful force, a jury still would need to determine whether he ought to have retreated before shooting Osborne. But OCGA § 16-3-23.1 clearly provides that a person who is authorized to use force to defend himself is under no obligation to retreat, regardless of whether retreating may have been a "more reasonable" option. Arnold, however, was not harmed by these erroneous statements during the immunity hearing. The trial court found that Arnold failed to

3. Finally, Arnold contends that the trial court improperly limited his voir dire of prospective jurors. In particular, Arnold complains that he was not permitted to ask prospective jurors about "stand your ground" laws. But Arnold did not object at the time, and he has failed to preserve this issue for appellate review. See Brockman v. State, 292 Ga. 707, 720 (8) (739 SE2d 332) (2013). Moreover, Arnold only put one question to the prospective jurors about "stand your ground" laws that was disallowed, and that question was confusing and almost unintelligible.[7] As such, *that* question properly was disallowed, even if Arnold was entitled generally to inquire about "stand your ground" laws. Arnold never asked any question about such laws in a proper form, and the trial court

_____

show by a preponderance of the evidence that he was in fear for his own safety or even that Osborne was reaching for a firearm, and its decision to deny Arnold's request for immunity is wholly supported by these findings. Indeed, absent a showing that Arnold was in fear for his own safety, the trial court could not properly have granted his pretrial motion for immunity, even if it had correctly understood that no retreat is required. See Sifuentes, 293 Ga. at 444-445. We note that Arnold does not suggest that the trial judge continued to misunderstand OCGA § 16-3-23.1 at the time of his trial (and particularly at the time that she acted as the "thirteenth juror" as described in footnote 4, supra). We see nothing in the record to suggest that any misunderstanding of the law affected Arnold's trial. Arnold was allowed to repeatedly remind the jury that "there is no duty to retreat" when a person is otherwise justified in using force, and the trial court properly charged the jury on OCGA § 16-3-23.1.

[7] Arnold's lawyer asked, "Is there anyone here who — basically, you keep up with the news and you have been somewhat familiar with basically — had a recent trendy case over the last couple of years in which there are the top of the phrase 'stand your ground'?".

did not improperly limit his voir dire upon this subject. See Gatlin v. State, 236 Ga. 707, 708 (2) (225 SE2d 224) (1976).[8]

Judgment affirmed. All the Justices concur.

Decided September 13, 2017 – Reconsideration denied October 2, 2017.

Murder. DeKalb Superior Court. Before Judge Hunter.

Michael W. Tarleton, for appellant.

Sherry Boston, District Attorney, Lenny I. Krick, Harry S. Ruth, Anna G. Cross, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.

---

[8] As an alternative claim, Arnold argues that his trial lawyer should have clarified his question about "stand your ground" laws or otherwise objected to the trial court's restriction of voir dire. But there is no reason to believe that the jury would have been struck any differently had Arnold been able to ask some other question of the potential jurors. As a result, Arnold is unable to show a reasonable probability that —  even if his lawyer should have acted in some other way —  the result of his trial would have been different. See Strickland v. Washington, 466 U. S. 668, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984).