304 Ga. 610
FINAL COPY

S18A0805. JOHNSON v. THE STATE.

BENHAM, Justice.

Appellant Martez Johnson appeals his convictions for crimes related to the shooting death of Cortez Ingram and the aggravated assault of Torin Waters.[1] Appellant argues that the evidence was legally insufficient to support the verdicts and that the trial court erred when it did not grant his motion for pretrial immunity. For the reasons that follow, we affirm.

---

[1] The crimes occurred May 29, 2015. On June 16, 2016, a grand jury returned indictments charging Appellant and two co-indictees with malice murder (Ingram), felony murder (aggravated assault of Ingram), aggravated assault (Ingram), aggravated assault (Waters), aggravated assault (Denario Pierce), aggravated assault (Brandi Boyd), and aggravated assault (Erykah Echols). After his co-indictees pled guilty to two counts of aggravated assault and had the other charges against them nolle prossed, Appellant proceeded to a jury trial that lasted from August 9, 2016 to August 12, 2016. At the trial's end, the jury acquitted Appellant of malice murder and of the aggravated assaults concerning Pierce, Boyd, and Echols. The jury returned verdicts of guilty on all remaining charges. On August 17, 2016, the trial court entered an order sentencing Appellant to life in prison for felony murder (Ingram) and 20 years to serve concurrently on the charge of aggravated assault (Waters). The remaining aggravated assault (Ingram) merged for sentencing purposes. Appellant moved for a new trial on September 9, 2016, and amended the motion on August 21, 2017. Appellant waived a hearing on his motion, and the trial court denied the motion as amended on November 29, 2017. Appellant filed a notice of appeal on December 11, 2017. Upon receipt of the record from the trial court, the appeal was docketed to the April 2018 term of this Court and submitted for a decision to be made on the briefs.

1. (a) Viewed in a light most favorable to upholding the jury's verdicts, the record shows the following. Appellant and Ingram knew each other for several years prior to the shooting. Several witnesses testified that in the two weeks leading up to the shooting, Ingram made threats directly to Appellant and indirectly to others that he would hurt or kill Appellant. The record is not clear as to why Ingram harbored animosity toward Appellant. Appellant's girlfriend testified that, on the day of the shooting, Ingram pointed a gun at her and told her to tell Appellant that Ingram was looking for him. Upon learning of this threat from his girlfriend, Appellant armed himself with a black handgun he obtained from a person Appellant knew as Bam. Bam did not testify at trial, and Appellant did not know the caliber of the gun. Appellant then entered a vehicle with his co-indictees and left the immediate area of his apartment complex. Eventually, Appellant and his co-indictees turned into a gas station where Ingram and Waters were located. According to eyewitnesses, Ingram had just gotten change from inside the gas station, and Waters was talking to a young woman when Appellant and the co-indictees pulled into the gas station.

Several people who were present at the gas station when the shooting occurred testified at trial. A gas station employee testified that, based on what

he observed, it appeared that "[Appellant] just came to shoot [Ingram] and [Appellant] just ran." A witness who was sitting in her car by a gas pump and waiting on her sister to buy something from inside the gas station testified that she heard a voice say "hey n*****" and, seconds later, heard gunshots from behind her. She stated that a bullet came through her car's front windshield. Another witness testified she saw Appellant "pull up, get out of the car, and shoot [Ingram]." Witnesses also testified that the co-indictees were shooting. The police did not find any weapon on or near Ingram's body, and eyewitnesses testified that they did not see Ingram with a weapon. In addition to proffering the testimony of these eyewitnesses, the State played for the jury a video recording from the gas station's surveillance system that captured the incident.

Waters, who was a victim of the shooting along with Ingram, testified that he heard Appellant say "F n*****" and turned to see Appellant shoot Ingram. Waters admitted to being armed and testified that he pulled out his 9-millimeter pistol and returned fire from behind another gas pump before being shot by a bullet that went through his leg. Paramedics took Waters to Grady Hospital to be treated for the gunshot wound he sustained during the incident. While at the hospital, the police presented Waters with a photographic lineup

containing Appellant's picture, and Waters identified Appellant as the person who shot Ingram. Waters could not identify who shot him.

A DeKalb County Medical Examiner testified that Ingram was shot in the chin and the bullet shattered his mandible, lacerated his jugular vein, and lodged in the back of his neck where the medical examiner was able to recover the bullet. The medical examiner testified that the cause of death was the gunshot wound, which resulted in blood loss and deprivation of blood going to and from the brain, and that the manner of death was homicide. Police collected three different types of shell casings from the scene — five .40 caliber Smith & Wesson casings, one .380 auto casing, and eight 9-millimeter Luger casings. A firearms expert testified that the bullet retrieved from Ingram's body was a .40 caliber bullet. No evidence was presented on what type of bullet traveled through Waters' leg. A revolver was found in the car in which Ingram and Waters were riding, but it was rusted shut and inoperable. The police did not recover any of the weapons used by Appellant, his co-indictees, or Waters.

Appellant testified at trial, claiming he shot Ingram in self-defense. According to Appellant, just before he and his co-indictees drove into the gas station in question, he saw Ingram and tried to exit the car to avoid a

confrontation. Appellant stated he believed he saw Ingram retrieve a handgun from a parked green Camry as Appellant and his co-indictees pulled into the gas station. Appellant said he raised his gun as he stepped out of the vehicle and Ingram advanced toward him. Appellant explained he shot at Ingram because he saw a man in a white shirt exit the green Camry with a gun in his hand. Appellant testified he also fired in the direction of Waters and the man in the white shirt once he heard shots coming from near the green Camry. Appellant stated he was fearful of Ingram because of Ingram's prior threats, and also because Ingram was a known gang member, often carried a firearm, and had shot and robbed people in the past.

(b) Appellant argues that the evidence was legally insufficient to support his convictions because he presented testimony showing he acted in self-defense. When the sufficiency of the evidence is raised on appeal, this Court must decide whether the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (II) (B) (99 SCt 2781, 61 LE2d 560) (1979). On appeal from a criminal conviction, the defendant is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict. *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014). This Court does

not reconsider evidence or attempt to confirm the accuracy of testimony. Id. So long as there is some competent evidence to support each fact necessary to make out the State's case, even if contradicted, the jury's verdict will be upheld. *Carnell v. State*, 246 Ga. App. 542, 543 (1) (541 SE2d 118) (2000).

Although Appellant argues he acted in self-defense when he shot Ingram and presented evidence to that effect when he testified at trial, it is the jury's role to determine credibility of witnesses and to resolve any conflicts or inconsistencies in the evidence. *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009).  Questions as to the existence of justification are for a jury to decide. See *Crayton v. State*, 298 Ga. 792, 793 (1) (784 SE2d 343) (2016) (stating "the jury was free to weigh appellant's credibility as it did the credibility of the other witnesses, and it was free to reject appellant's affirmative defenses").  The jury was able to consider Appellant's credibility, as well as the credibility of other witnesses, watch the video recording of the shooting, and hear from several eyewitnesses who described how the shooting unfolded.  Based on the evidence proffered, the jury was authorized to find that Appellant was not acting in self-defense and that he was guilty of the crimes for which he was convicted. See *Baldwin v. State*, 263 Ga. 524, 525 (2) (435 SE2d 926) (1993) (holding that even though the defendant introduced evidence

he was acting in self-defense, the jury was not required to draw that conclusion where the State presented evidence suggesting otherwise).  The evidence was sufficient to sustain Appellant's convictions. See id.

2. Appellant filed a pretrial motion for immunity from prosecution under OCGA § 16-3-24.2,[2] which provides in relevant part that a defendant is immune from criminal prosecution if he used justifiable force pursuant to OCGA § 16-3-21.[3]  At a pretrial hearing on the motion, witnesses testified that Appellant and his girlfriend had been threatened by Ingram in the days leading up to and on the day of the shooting.  In addition, Appellant testified that Ingram was armed with a gun and was the aggressor in the altercation that led to Ingram's death.  However, upon watching the video recording from the gas station's surveillance system, the trial court noted that it did not see any

_____

[2] OCGA § 16-3-24.2 provides in relevant part: "A person who uses threats or force in accordance with Code Section 16-3-21 . . . shall be immune from criminal prosecution therefor . . . ."

[3] OCGA § 16-3-21 (a) provides:
> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; . . . a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

weapon in Ingram's hand and did not see Ingram make any aggressive moves. Instead, the trial court stated, "[A]ll I see is [Appellant] rolling out of the car with a gun, firing." The trial court ultimately denied Appellant's immunity motion declaring that he failed to establish his justification defense by a preponderance of the evidence. See *Arnold v. State*, 302 Ga. 129, 132 (2) (805 SE2d 94) (2017).

Appellant now argues the trial court erred in denying his pretrial motion for immunity. We disagree. In reviewing the denial of a motion for pretrial immunity, this Court must view the evidence in a light most favorable to the trial court's ruling. *Sifuentes v. State*, 293 Ga. 441, 444 (2) (746 SE2d 127) (2013). This Court accepts the trial court's findings with regard to questions of fact and credibility if there is any evidence to support them. Id. Viewed in a light most favorable to the trial court's ruling, the evidence adduced at the hearing supports the trial court's decision to deny Appellant's justification defense. See id. The evidence presented at the pretrial immunity hearing was similar to the evidence presented at trial, and the court explicitly noted that it did not appear Ingram was threatening Appellant.[4] Consequently, the trial

---

[4] When facts are discernible from a videotape, this Court's review is de novo. See *Cope v. State*, 304 Ga. 1, 4 (2) (816 SE2d 41) (2018). Upon review, the video recording appears to be consistent with the trial court's observations noted during the pretrial hearing.

court was authorized to find that Appellant failed to meet his burden of showing that he was entitled to immunity under OCGA § 16-3-24.2. See *Arnold*, 302 Ga. at 131 (1); *Sifuentes*, 293 Ga. at 444 (2).

Judgment affirmed. All the Justices concur.

Decided October 22, 2018.

Murder. DeKalb Superior Court. Before Judge Hunter.

Crawford & Boyle, Eric C. Crawford, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Gerald L. Henderson, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.