312 Ga. 149
FINAL COPY


S21A0730.  HUGHES v. THE STATE.


BOGGS, Presiding Justice.

Appellant Re'Dayon Hughes challenges his 2019 convictions for felony murder and other crimes in connection with the shooting death of Dre'Landon Brown.[1] Appellant contends that the trial court erred by admitting evidence that he vandalized Marjorie Reed's car, that his trial counsel was ineffective for failing to question Appellant

---

[1] Brown was killed on November 23, 2017. On February 12, 2018, a Forsyth County grand jury indicted Appellant for malice murder, felony murder predicated on aggravated assault, aggravated assault of Dre'Landon, and aggravated assault of Jaymareion Brown. On July 10, 2018, Appellant filed a pretrial motion for immunity from prosecution. A hearing on the motion was held on October 12, 2018, and the trial court denied the motion in an order entered on October 25, 2018. At a trial from January 7 to 11 and 14, 2019, the jury found Appellant not guilty of malice murder but guilty of the remaining counts. The trial court sentenced Appellant to serve life in prison for felony murder and 20 years concurrently for the aggravated assault of Jaymareion. The aggravated assault of Dre'Landon merged with the felony murder count. On January 28, 2019, Appellant filed a motion for new trial, which he amended through new counsel on September 17, 2019 and October 14, 2019. After a hearing on November 18, 2019, the trial court denied the motion for new trial as amended in an order filed on December 14, 2020. Appellant filed a timely notice of appeal, the case was docketed in this Court for the April 2021 term, and oral argument was heard on May 18, 2021.

about alleged prior difficulties with Dre'Landon and for failing to object to the admission of other prior difficulties evidence, that the cumulative prejudice of these errors requires a new trial, and that the trial court erroneously considered Appellant's failure to retreat in denying his pretrial motion for immunity. We affirm.

The evidence presented at trial showed the following. On November 23, 2017, Appellant shot and killed Dre'Landon as Appellant fled the Brown family home. Appellant admitted to shooting Dre'Landon but claimed that it was done in self-defense because Dre'Landon was chasing him down the stairs of the Brown family home with a gun.

Earlier that evening, Appellant sneaked into the home of Reed and her teenage grandchildren — Marjorie Brown, Absolom Brown, Dre'Landon, and Jaymareion Brown — to meet with Marjorie, who had recently given birth to Appellant's child. Appellant was carrying a loaded gun and a backpack with a few rounds of loose ammunition. Reed had banned Appellant from her home and from contact with Marjorie, who was herself barred from contact with Appellant under

2

court order.

After Jaymareion and Dre'Landon saw a photo on social media of Appellant, Marjorie, and their child in what looked like Marjorie's bedroom, the two brothers confronted Marjorie at her bedroom door. When she denied that Appellant was in the room, Jaymareion pushed into the room with Dre'Landon following behind. Not seeing Appellant in the room, Jaymareion opened the closet door to find Appellant hiding inside. Appellant then pointed a gun at Jaymareion, who exclaimed, "So you're going to bring a gun into our house." When Appellant did not respond, Jaymareion said, "Bro, just leave." Appellant pointed his gun at both brothers, who remained still, as he first exited the closet and then the room.

Seconds later, as Appellant proceeded downstairs, Dre'Landon left Marjorie's room and followed Appellant down the stairs. When Appellant reached the bottom of the stairs, rather than go out the nearby front door, Appellant stopped, turned around, and shot Dre'Landon twice in the chest and once more as he fell. Meanwhile, Jaymareion left the bedroom and went straight down the stairs.

When he reached the final step, he heard gunshots and ran back up the stairs. Appellant fled out the back door and hid in some nearby bushes.

Jaymareion ran back down the stairs to find Dre'Landon bleeding on the floor. Jaymareion attempted to stop the bleeding and called the police. Jaymareion saw no gun near his brother.

While Jaymareion tended to his brother's wounds, Marjorie went out the front door to look for Appellant. Upon finding him, she agreed to grab their child, get the keys to the family car, and leave with him. She went back inside, took the child, and brought him to Appellant. She then returned to the house to pack her things, but Reed stopped her from leaving until the police arrived.

By the time the police arrived, Dre'Landon was dead. The police found and arrested Appellant one block from the house. In searching the home for Appellant's firearm, the police found a few rounds of loose ammunition in the backpack Appellant had left inside Marjorie's closet. A specialized canine unit also searched the premises for the missing firearm and located it near an air

conditioning unit at an adjoining house. No other working gun was ever found.[2] According to the autopsy, there was no soot on Dre'Landon's skin, indicating that he was shot from a distance of at least three feet away.

A series of confrontations had occurred between Appellant and various members of Dre'Landon's family in the months leading up to the shooting death of Dre'Landon. Initially, Dre'Landon's family had lived in Roswell, where Appellant and Marjorie met at school and started dating. According to Reed, Marjorie's behavior started to change when she began dating Appellant. She began running away with Appellant and started drinking, using drugs, and breaking into and sleeping in abandoned places. Reed also heard that Appellant had "beat up" Marjorie. These events led Reed to prohibit the two teenagers from seeing each other, including barring Appellant from her home.

Appellant's relationship with Marjorie continued, however,

---

[2] Upon searching the house, the police found a revolver in the first floor front hall closet. It looked like it had been pieced together, was missing the trigger and half of its frame, and was incapable of firing.

generating rumors at school that the two were engaging in sexual activity. Absolom and Jaymareion each confronted Appellant separately at school over the rumors and his derogatory sexual comments about Marjorie. During the interaction with Jaymareion at school, Appellant became angry and the two boys began threatening each other. A teacher separated them before a fight broke out.

Sometime later, while walking down a trail behind the family home, Absolom saw Appellant with another unidentified person. Absolom told Appellant to wait, went home, and returned with Jaymareion and Dre'Landon. Absolom noticed that Appellant appeared to be holding an AR-15-style rifle. Absolom, scared, began to move away before realizing the rifle was only a BB gun. The unknown person with Appellant then approached the three brothers and asked whether Absolom wanted to fight. Jaymareion interjected that no one would fight his brother without also fighting him. Appellant then threatened to kill the brothers.

During yet another incident, Jaymareion and Dre'Landon

caught Appellant inside of their home and punched him. They then ushered Appellant outside and reminded him that he was not allowed in the family home.

At some point, Reed invited Appellant to talk with her. Reed made it clear to Appellant that he was not allowed in the family home. Immediately following this discussion, Reed found her car vandalized: all four tires had been slashed and the windshield broken. Appellant admitted to Marjorie that he had vandalized Reed's car; Marjorie told the rest of the family.

Finally, in the summer of 2017, to give Marjorie "a clean break away from all that badness" in Roswell, Reed moved the family to a new home in Forsyth County. In November 2017, Marjorie gave birth to Appellant's child. After the move to Forsyth County, Reed once again prohibited Appellant from being in the family home and told Marjorie not to tell Appellant their new address. Marjorie, however, told Appellant the new address and continued her relationship with him.

1. Appellant claims that the trial court erred by denying his

7

motion in limine and admitting testimony that Appellant vandalized Reed's car. In denying the motion in limine, the trial court explained that the testimony was appropriate prior difficulties evidence and that it explained the relationships and circumstances leading to the charges in this case. Appellant argues that the evidence was inadmissible because it was neither intrinsic to the charged offenses nor evidence of prior difficulties between Appellant and the victims under OCGA § 24-4-404 (b). We disagree.

Evidence is intrinsic when it pertains "to the chain of events explaining the context, motive, and set-up of the crime," and is admissible so long as it is "linked in time and circumstances with the charged crime, . . . forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury[.]" *Heade v. State*, ___ Ga. ___, ___ (___ SE2d ___) (2021) (citation and punctuation omitted). "There is no bright-line rule regarding how close in time evidence must be to the charged offenses, or requiring evidence to pertain directly to the victims of the charged offenses, for that evidence to be admitted properly as

intrinsic evidence." Id. (citation and punctuation omitted). "We review a trial court's ruling admitting evidence as intrinsic for an abuse of discretion." Id. (citation and punctuation omitted).

Here, the evidence that Appellant vandalized Reed's car was a part of the chain of events leading to the charged crimes. Occurring amidst a series of escalating threats and acts of violence by Appellant and members of Dre'Landon's family, it showed the tension in the relationship between the persons involved in this case, was a precipitating cause for the family's relocation from Roswell to Forsyth County, and explained, in part, why Appellant was not permitted in Reed's home the night of the shooting. When considered in light of the other evidence in this case, we cannot conclude that the trial court abused its discretion by concluding that the evidence that Appellant vandalized Reed's car was reasonably necessary to complete the story for the jury and was therefore intrinsic evidence. See *Clark v. State*, 306 Ga. 367, 374 (829 SE2d 306) (2019) (concluding that evidence was intrinsic in part because it explained why appellant was not welcome in the victim's home).

Of course, intrinsic evidence may be "excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403 ("Rule 403"). "In reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Heade*, ___ Ga. at ___ (citation and punctuation omitted).

As explained above, Appellant's vandalism of Reed's car was probative in explaining the context of the charged crimes and the increasingly hostile relationship between Appellant and Reed and members of her family. The trial court was within its discretion to determine that the prejudicial impact of this act was not unfair and did not substantially outweigh its probative value. Appellant, therefore, has failed to show that the trial court abused its discretion in admitting the evidence.

2. Appellant claims that his trial counsel rendered ineffective

assistance for failing to elicit testimony at trial that Dre'Landon had a gun during a prior incident involving Appellant and for failing to object to several pieces of testimony regarding the numerous prior conflicts between Appellant and members of Dre'Landon's family. We disagree.

To prevail on a claim of ineffective assistance of counsel, Appellant must show both that his trial counsel's performance was deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). An appellant must satisfy both prongs of the *Strickland* test, and if he fails as to one prong, "it is not incumbent upon this Court to examine the other prong." *Smith v. State*, 296 Ga. 731, 733 (770 SE2d 610) (2015) (citation and punctuation omitted). To establish deficient performance, an appellant "must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in light of all the circumstances and prevailing norms. Id. (citation and punctuation

omitted). To establish prejudice, an appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous. See *Smith*, 296 Ga. at 733.

(a) Appellant asserts that his trial counsel rendered ineffective assistance by failing to introduce evidence at trial that Appellant was assaulted by Dre'Landon with a gun in a prior incident. At the pretrial hearing on Appellant's motion for immunity, Appellant testified that eight months prior to the shooting of Dre'Landon, Dre'Landon drove past Appellant and pointed a gun at him, placing him in fear of being shot. Trial counsel, however, did not elicit this same testimony at trial. Appellant argues that this failure was not only constitutionally deficient but also was prejudicial because the critical issue in the case was whether Dre'Landon had a gun, putting Appellant in reasonable fear for his life when he shot Dre'Landon.

Even assuming trial counsel's failure to elicit this testimony at

12

trial was deficient, Appellant has failed to show prejudice. Although the testimony, had it been elicited at trial, may have shown that Dre'Landon had access to a gun eight months earlier, the evidence was very strong that only Appellant had a gun on the night Dre'Landon was shot: no one ever saw Dre'Landon with a gun, and Appellant's gun was the only useable one found at the scene, which was searched by the police with a canine unit trained to detect guns. See *Henderson v. State*, 310 Ga. 708, 714 (854 SE2d 523) (2021) (concluding that exclusion of testimony was harmless where evidence of guilt was "very strong"). Further, the testimony would have shown merely another in a long list of incidents of prior threats or violent acts between Appellant and members of Dre'Landon's family leading up to the shooting. See *Byers v. State*, 311 Ga. 259, 263 (857 SE2d 447) (2021) (concluding that exclusion of testimony was harmless where it was essentially cumulative of other evidence). Appellant has therefore failed to show that the outcome of the trial probably would have been different absent trial counsel's failure to elicit testimony regarding this prior incident. See, e.g.,

*Swann v. State*, 310 Ga. 174, 178 (850 SE2d 137) (2020) (denying an ineffective assistance of counsel claim for failure to offer evidence because appellant failed to show prejudice).

(b) Appellant further claims that his trial counsel was constitutionally deficient for failing to object to several pieces of testimony regarding the numerous prior incidents of conflict between Appellant and members of Dre'Landon's family. Specifically, Appellant argues that trial counsel should have objected to the following: (1) Reed's testimony regarding why her family left Roswell; (2) her testimony that Appellant beat Marjorie; (3) Absolom's and Jaymareion's testimony regarding Appellant's sexually derogatory comments about Marjorie; and (4) Absolom's and Jaymareion's testimony about the incident on the trail involving Appellant and a BB gun.

Appellant has failed to prove that his trial counsel acted deficiently in choosing not to object to this testimony. "Reasonable trial strategy and tactics do not amount to ineffective assistance of counsel." *Griffin v. State*, 309 Ga. 860, 866 (849 SE2d 191) (2020)

14

(citation and punctuation omitted). "[M]erely arguing that there is another, or even a better, way for counsel to have performed" is not enough. Id. at 867 (citation and punctuation omitted).

Here, at the motion for new trial hearing, trial counsel explained his trial strategy. He sought to show that Appellant was a loving and interested father who was at Reed's home for peaceful purposes and that the shooting would never have occurred but for the aggression of Dre'Landon. The prior confrontations and incidences of violence between Appellant and members of Dre'Landon's family supported the defense's theory that the bad blood between the parties contributed to Appellant's reasonable fear of them, which in turn supported his claim of self-defense. Given trial counsel's "founded, reasonable belief that [Appellant] was best served by using this evidence to his advantage instead of objecting to it, counsel's decision amounted to reasonable trial strategy that does not constitute deficient performance." *Griffin*, 309 Ga. at 867.

Further, as to Reed's comment that Appellant had beaten Marjorie, the record supports the trial court's conclusion that trial

counsel's failure to object was reasonable trial strategy. When asked at trial whether Reed moved her family out of Roswell because of Appellant, Reed explained:

> Well, it was mainly because of her being involved with him because she was running off, she was staying with him. They were at a hotel there in Roswell. And I even went to that person and asked them to let me know if they find her. Then I was informed that she had been beat up by him.

The prosecutor immediately stopped Reed saying, "I don't want to go into any of that, okay," redirecting her to identify whether Appellant was the person she had just explained Marjorie was running off with.

At the motion for new trial hearing, trial counsel explained that he did not object to Reed's comment because Reed had been promptly stopped and redirected by the prosecutor and that he believed it best not to object to this off-hand comment so as to not draw further attention to it. Appellant has failed to show that this was an unreasonable strategic decision that constituted deficient performance. See *Durham v. State*, 292 Ga. 239, 242 (734 SE2d 377)

16

(2012) (concluding that trial counsel was not deficient for intentionally failing to object to brief, harmful testimony so as not to draw attention to it). Accordingly, Appellant has failed to demonstrate that his trial counsel provided ineffective assistance.

3. Appellant claims that the harm of the alleged cumulative errors by the trial court and trial counsel must be assessed under *State v. Lane*, 308 Ga. 10, 17-18 (838 SE2d 808) (2020). As explained above, however, there are not multiple errors from which to assess cumulative harm. See *Cox v. State*, 306 Ga. 736, 743 (832 SE2d 354) (2019) ("[W]e evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." (citation and punctuation omitted)).

4. Finally, Appellant argues that the case must be remanded for reconsideration of his motion for immunity because the trial court wrongly considered his duty and failure to retreat as a ground for denying him immunity under OCGA § 16-3-24.2. We disagree.

"A person is justified in threatening or using force against another when and to the extent that he . . . reasonably believes that

17

such threat or force is necessary to defend himself . . . against such other's imminent use of unlawful force[.]" OCGA § 16-3-21 (a). Likewise, a person is justified in using deadly force only if he "reasonably believes that such force is necessary to prevent death or great bodily injury to himself[.]" Id. In defending himself, he "has no duty to retreat and has the right to stand his . . . ground and use force as provided in [OCGA § 16-3-21], including deadly force." OCGA § 16-3-23.1. If his use of force falls within these parameters, he "shall be immune from criminal prosecution." OCGA § 16-3-24.2.

To avoid trial, a defendant bears the burden of proof to show that he is entitled to immunity by a preponderance of the evidence. See *Bunn v. State*, 284 Ga. 410, 413 (667 SE2d 605) (2008). On appeal, the evidence is viewed in the light most favorable to the trial court's ruling, and the trial court's findings of fact and credibility determinations are accepted if there is any evidence to support them. See *Hipp v. State*, 293 Ga. 415, 418 (746 SE2d 95) (2013).

Here, the trial court held a hearing on Appellant's motion for immunity, weighed two competing versions of events, and

18

determined that Appellant was not entitled to immunity. At the hearing, Appellant testified that after the Brown brothers became suspicious that Appellant was in the house, the Brown brothers loudly threatened Appellant as they stormed down the hall and forced their way into Marjorie's room before discovering Appellant in the closet. When Appellant pointed his gun at the Brown brothers, Jaymareion told Appellant to put down the gun and fight. Then Dre'Landon informed Appellant that he was not the only one with a gun and left the room. Appellant then ran down the stairs and tried to go out the front door but could not get it unlocked. He heard Dre'Landon running down the stairs and saw him raise a gun toward him so Appellant shot him in self-defense before fleeing out the back door.

Jaymareion and Reed testified and denied Appellant's version of events. They explained that the brothers had not been loud and threatening, that Dre'Landon did not leave the room, mention a gun, or have one, and that Appellant never attempted to flee through the front door and also could have exited out the back door without

shooting Dre'Landon.

In its order, the trial court laid out this testimony and explained that although "prior difficulties" between Appellant and members of Dre'Landon's family could have given Appellant "a reasonable fear of further violence . . . in general[,]" Appellant based "his need to shoot Dre'Landon on the fact that he could not get out of the front door, which gave Dre'Landon, *armed with a gun*, time to get downstairs and confront him." (Emphasis supplied.) The trial court then explained that Appellant was able to leave Marjorie's room, that "[n]o gun was found" near Dre'Landon, and that it found Jaymareion's and Reed's testimony that Dre'Landon did not have a gun more credible than Appellant's version of events. This led the trial court to conclude:

> [Appellant] has not proved to the [c]ourt by a preponderance of the evidence that he could not open the front door and that *he shot to defend himself from an armed person.* The [c]ourt does not discount all of the testimony presented by [Appellant] in this case, but finds that [Appellant] had placed himself in a position to exit . . . Reed's home without further violence and elected to shoot the *unarmed victim anyway*. Thus, while there is evidence supporting [Appellant's] claim for self-defense,

the [c]ourt finds that [Appellant] has not carried his burden of proof for the purpose of obtaining immunity.

(Emphasis supplied.)

In summary, the trial court concluded that Appellant's claim of self-defense was founded on his testimony that he was unable to escape the armed, pursuing Dre'Landon. However, given that Appellant was able to leave Marjorie's room unharmed and that the trial court did not credit Appellant's testimony that Dre'Landon had a gun, the trial court concluded that Appellant failed to prove that he was in reasonable apprehension or fear of imminent death or great bodily injury from Dre'Landon in order to justify his use of deadly force. Given these findings, the trial court was authorized to find that Appellant failed to carry his burden to prove that he was entitled to immunity. See, e.g., *Arnold v. State*, 302 Ga. 129, 132 n.6 (805 SE2d 94) (2017) (concluding that the trial court's decision to deny motion for immunity was "wholly supported by [the court's] findings").

Appellant argues, however, that the trial court's repeated

21

references to his failure to retreat undermine its denial of his motion for immunity by showing that the court improperly relied on Appellant's failure to retreat. Although OCGA § 16-3-23.1 "clearly provides that a person who is authorized to use force to defend himself is under no obligation to retreat, regardless of whether retreating may have been a more reasonable option," *Arnold*, 302 Ga. at 132 n.6, as we have concluded above, the evidence supported the trial court's determination that Dre'Landon was unarmed and that Appellant was not authorized to use force to defend himself under the circumstances. See id. Therefore, the trial court's references to Appellant's failure to retreat did not prejudice him and provide no basis for reversing the denial of immunity. See id.

*Judgment affirmed. Nahmias, C. J., and Peterson, Warren, Bethel, Ellington, McMillian, and LaGrua, JJ., concur.*

Decided July 7, 2021.

Murder. Forsyth Superior Court. Before Judge Dickinson.

*Clark & Towne, David E. Clark*, for appellant.

*Penny A. Penn, District Attorney, Heather N. Dunn, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Cody M. Long, Assistant Attorney General*, for appellee.