313 Ga. 107
FINAL COPY

S22A0041.  ELLISON v. THE STATE.

PETERSON, Justice.

Emanuel Ellison appeals his convictions for felony murder and other offenses stemming from the fatal shooting of Kentrealvist Malcom during an argument at an apartment complex.[1] Ellison's sole claim of error is that the trial court erred in denying his motion

---

[1] The shooting took place on May 16, 2014. On July 18, 2014, a Walton County grand jury indicted Ellison for malice murder, two counts of felony murder, aggravated assault, possession of a firearm by a convicted felon, two counts of possession of a firearm during the commission of a felony, and tampering with evidence. Ellison filed a motion for immunity from prosecution under OCGA § 16-3-24.2. At a September 2017 evidentiary hearing, the trial court issued an oral ruling denying the motion. The case was tried from October 2 to 6, 2017, and a jury found Ellison not guilty of malice murder and one of the counts of possession of a firearm during the commission of a felony, but guilty of both counts of felony murder and all other charged offenses. On November 15, 2017, the trial court sentenced Ellison to serve life in prison without the possibility of parole for one count of felony murder, a consecutive five-year sentence for possession of a firearm during the commission of a felony, a concurrent five-year sentence for possession of a firearm by a convicted felon, and a concurrent 12-month sentence on the tampering with evidence count; the other counts merged or were vacated by operation of law. On November 17, 2017, Ellison filed a motion for new trial, which was amended by appellate counsel on May 1, 2020. The trial court denied the motion in an order entered on July 2, 2021. Ellison filed a timely notice of appeal, and the case was docketed to this Court's term beginning in December 2021 and submitted for a decision on the briefs.

for immunity from prosecution under OCGA § 16-3-24.2 based on a justification defense. But the record supports at least one of the trial court's two bases for its ruling — an adverse credibility determination — and so we affirm.

As the trial court's ruling on a motion for immunity under OCGA § 16-3-24.2 must be based solely on the evidence presented at the pretrial hearing on the motion, our review of Ellison's argument is limited to that evidence as well. See *Sifuentes v. State*, 293 Ga. 441, 444-445 (2) & n.3 (746 SE2d 127) (2013). The evidence at the pretrial hearing showed that Ellison frequented an apartment complex where his mother and sister resided. On direct examination, Ellison testified as follows.

Malcom had become embroiled in a series of physical altercations at the apartment complex, some involving firearms. In May 2014, Ellison "assisted" law enforcement officers in arresting Malcom for various offenses. When Ellison next encountered Malcom in the neighborhood, Malcom was "hostile" toward Ellison.

On May 16, Ellison was visiting with his wife, children, and

2

other family members in front of his mother's apartment when he saw Malcom beating a teenage girl. After Ellison's mother argued with Malcom, Malcom left the area, but Ellison remarked to his mother that he thought Malcom would return with a gun. When Malcom did return, he made "a gun symbol" over the head of Ellison's mother. Ellison repeatedly asked Malcom to leave the area, but Malcom instead made statements such as, "We run this s**t," and "BOSS run this s**t." "BOSS" was a reference to Malcom's Gangster Disciples street gang. Malcom ultimately began pulling a firearm out of his pocket, at which point Ellison "popped off" and shot him out of fear for the lives of his family members.

Malcom then began to back away, but Ellison did not even realize that he had hit Malcom. Malcom "trot[ted]" away, still holding his gun and saying, "Boot up" and "Get the gun." Ellison fled the scene, fearful and panicking. He turned himself in to the police after spending time with family. Ellison had been in a gang — the Black Gangster Disciples, which was different from the Gangster Disciples — but had not been affiliated with it for the previous 16

3

years.

On cross-examination, however, a different picture emerged. Ellison acknowledged that he regularly carried a firearm despite being a convicted felon[2] and pulled a gun out of his own coat pocket when he shot Malcom. He also acknowledged that he bumped chests with Malcom during their May 16 altercation. And Ellison acknowledged that he told the police that he had thrown his gun into Lake Oconee, when in fact he had thrown it into a dumpster. The State also introduced two series of Facebook posts by Ellison, one from February 2013 and the other from March 2014. In the February 2013 posts, Ellison appeared to warn a "window peeper" that Ellison might respond with violence if the "peeper" came back to Ellison's home; noting that he had "been in and out of prison" his whole life, Ellison said that he would not "lose one day of sleep" over "takin one less n***a out [of the] world." In the March 2014 posts, Ellison

_____

[2] Although the details of Ellison's criminal background were not thoroughly developed at the immunity hearing, at trial it was shown that in 2009, Ellison pleaded guilty to possession of a firearm by a convicted felon and discharge of a firearm on or near a public highway. The charging document in that case referenced a 2002 felony cocaine-possession conviction.

appeared to discuss some sort of theft, saying that his "name [was] on everything" and that he would "DIE for mine[.]" He said that certain people were "bout to catch dis rapid fire over here" and that he had "enough clips[,]" adding, "I shoot shot outlawed in all 50 states[.]" In his testimony, Ellison tried to explain his Facebook posts by pointing to property crimes by gang members and an incident involving a peeping Tom.

Ellison called one other witness, a detective who testified that Malcom was a known Gangster Disciple operating in the area surrounding the apartment complex at the time of the shooting. The detective also testified that within a couple of days before Malcom was shot, Malcom was arrested at the apartment complex on an outstanding warrant, and arresting officers located in the apartment a gun of which Malcom claimed ownership. The detective testified that shortly before Malcom's arrest, he received information that Malcom had been "terrorizing" the neighborhood and "pulling guns on people."

The State presented testimony at the hearing from three

associates of Malcom. Jamal Johnson, a friend of Malcom, testified that he witnessed the May 16 argument between Ellison and Malcom, as well as the shooting. Johnson testified that he did not see any physical contact between the two, except perhaps Ellison pushing Malcom away, and did not see Malcom appear to reach for a gun or see a gun in Malcom's hands. Another witness, Malcom's cousin Jabbarrius Green, denied seeing the shooting itself, but said he was with Malcom before the shooting and saw him after, and did not see Malcom with a gun that day. Another relative of Malcom, Keshaoun Jones, testified that he saw Malcom running and holding a gun just after a gunshot rang out, but also said he subsequently heard Malcom say, "Go get my gun." All three witnesses disclaimed familiarity with the Gangster Disciples gang.

The trial court issued an oral ruling denying the motion for immunity at the end of the hearing. The court ruled that Ellison was statutorily precluded from pretrial immunity because he was a convicted felon who had acted while in possession of a firearm. Alternatively, the court ruled that Ellison had not carried his

burden of showing that the shooting was justified under a "more probable than not" standard, saying that Ellison was not credible because he admittedly lied to police about the incident and "the only evidence" that he had presented was his own testimony as a convicted felon.

The case proceeded to trial later in 2017. Ellison again testified that he shot Malcom after Malcom pulled a gun. The jury found Ellison not guilty of malice murder but guilty of felony murder and other offenses. The trial court denied Ellison's motion for new trial, in which he argued that the court had erred in denying his motion for immunity. Ellison now appeals.

Ellison argues that he met his burden of showing by a preponderance of the evidence that he was acting in defense of himself and his family when he shot Malcom and that the trial court thus erred in denying his motion for immunity pursuant to OCGA § 16-3-24.2. We conclude that the trial court did not err in denying the motion.

With some exceptions, a person who uses threats or force in

accordance with OCGA § 16-3-21 shall be immune from criminal prosecution. See OCGA § 16-3-24.2.[3] OCGA § 16-3-21 (a) provides that a person generally "is justified in using force which is intended or likely to cause death or great bodily harm . . . if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person[.]" To prevail on a motion for immunity under OCGA § 16-3-24.2, a defendant must establish his justification defense by a preponderance of the evidence. See *Sifuentes*, 293 Ga. at 444 (2). "In reviewing the denial of a motion for pretrial immunity, we must view the evidence in the light most favorable to the trial court's

---

[3] Ellison argues that the trial court erred in concluding that a 2014 amendment to OCGA § 16-3-24.2 does not apply to his case. Prior to July 1, 2014, the immunity statute excluded from pretrial immunity persons who used a weapon that they carried or possessed in violation of Title 16, Chapter 11, Article 4, Part 3, which includes OCGA § 16-11-131, the felon-in-possession statute. The General Assembly removed that exclusion effective July 1, 2014. See Ga. L. 2014, pp. 599, 602-603, § 1-3; *Johnson v. State*, 308 Ga. 141, 146 n.8 (839 SE2d 521) (2020). The trial court apparently concluded that Ellison could not take advantage of the amendment because the crimes charged took place prior to its effective date. Ellison argues that the new statute applies because it took effect prior to his immunity hearing. The State agrees with Ellison that the new statute applies. We do not decide this issue, because we conclude that the evidence supports the court's alternative basis for denying Ellison's motion — that he did not meet his burden of showing that the shooting was justified.

ruling and accept the trial court's findings of fact and credibility determinations if there is any evidence to support them." Id.

Here, the trial court was authorized to conclude that Ellison did not meet his burden. Although the trial court's remark that Ellison presented "only" his own testimony in support of his motion was not entirely correct, it is true that the only eyewitness testimony that the defense presented about what transpired between Ellison and Malcom when Malcom was shot came from Ellison himself. And the trial court explicitly discredited Ellison's testimony about the circumstances of the shooting. The trial court identified two specific, proper bases for discrediting Ellison's testimony: his prior felony conviction, and his admitted untruthfulness with the police about at least some of the circumstances surrounding the shooting — in particular, where he had discarded the gun. See OCGA § 24-6-609 (impeachment by evidence of conviction of crime); *Holmes v. State*, 311 Ga. 698, 701 (2) (859 SE2d 475) (2021) (in evaluating sufficiency of the evidence to support conviction, noting that defendant's credibility as a witness was undermined by admission that he lied

9

to police). And testimony of the State's witnesses undermined Ellison's testimony that Malcom drew a gun before Ellison shot him; two said they did not see Malcom with a gun, and the witness who said he saw Malcom with a gun after the shooting also said he subsequently heard Malcom call for his gun. The hearing record also included evidence in the form of Ellison's Facebook posts that supported an inference that Ellison shot Malcom out of anger, to assert dominance, or to avenge past wrongs, rather than in self-defense.

Given this evidence, the trial court was authorized not only to reject Ellison's self-serving testimony but also to conclude that he had not met his burden to prove justification so as to entitle him to immunity. See *Hughes v. State*, 312 Ga. 149, 157-158 (4) (861 SE2d 94) (2021) (trial court authorized to find that defendant failed to carry his burden that he was entitled to immunity where evidence showed that defendant had been able to leave the bedroom where the victim had confronted him, and the trial court did not credit defendant's testimony that the victim had a gun); *Hornbuckle v.*

10

*State*, 300 Ga. 750, 753 (2) (797 SE2d 113) (2017) (where physical evidence and defendant's statements in the 911 call and on cross-examination provided some evidence that the encounter did not occur in the manner she described, trial court was authorized to conclude that defendant's actions were motivated by aggression or anger rather than self-defense and so deny immunity); *Sifuentes*, 293 Ga. at 444-445 (2) (trial court did not err in denying immunity where evidence supported a finding that shooting was motivated by gang rivalry and a desire for revenge).

*Judgment affirmed. All the Justices concur.*


Decided January 19, 2022.

Murder. Walton Superior Court. Before Judge Ott.

*The Doepke Law Firm, Teri L. Doepke*, for appellant.

*Randal M. McGinley, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.

11