**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**June 28, 2024**

# In the Court of Appeals of Georgia

A24A0197. GRIFFIN v. THE STATE.

MARKLE, Judge.

Following a jury trial, Ashlyn Griffin was convicted of aggravated assault and possession of a firearm during the commission of a felony.[1] Griffin now appeals from the denial of her motion for new trial, arguing that the trial court erred by (1) dismissing her motion for immunity from prosecution; (2) denying her motion for directed verdict because the evidence was insufficient to support her conviction for aggravated assault; (3) admitting the victim's out-of-court statement regarding Griffin's alleged abuse towards him; (4) excluding other relevant witness testimony; and (5) that she was prejudiced by juror misconduct during deliberations. We

---

[1] Griffin was also charged with felony murder, but the jury acquitted her on this count.

determine that, in dismissing Griffin's pre-trial motion for immunity, the trial court conflated the principles regarding the affirmative defense of self defense and pre-trial immunity from prosecution. We therefore vacate the trial court's ruling in this regard and remand the case for further proceedings consistent with this opinion. Therefore, we do not reach the merits of Griffin's remaining arguments.

Viewing the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence at trial showed that, on the morning of June 5, 2020, Griffin and the victim, her live-in boyfriend, argued after Griffin learned the victim had damaged her car the previous night. After Griffin returned to the home from taking their daughter to daycare, the victim confronted Griffin while she was on the phone with her friend, and the two continued to argue until Griffin went into the bathroom to take a shower. While Griffin was in the shower, the victim started packing his things to leave and he started throwing things around the room. The victim then entered the bathroom, ripped down the shower curtain and rod, and told Griffin he was going to beat her. Griffin exited the shower and the victim started pushing her. As Griffin tried to calm the victim, he dumped the contents of Griffin's purse on the bed and tried to hit her. The victim

grabbed her by the neck and shoved her against the wall. Griffin was able to free herself and then went back into the bathroom and closed the door. The victim started banging on the door, opened it, and yelled at her. Griffin, who had a gun in the bathroom under the sink cabinet, grabbed it and fired a shot, causing the victim to turn and flee. Griffin followed him, firing a second shot and striking the victim. Griffin then ran to the neighbor's house and called the police.

When the police arrived at the scene, they found the victim dead, and they were able to determine that a total of two shots were fired, with the second shot being fatal. Police located shell casings on the floor near the door of the master bedroom and on the bathroom floor. They also observed signs of a struggle, and they noticed blood smudges and a hole on the inside of the bathroom door. Police seized a semi-automatic handgun from the scene.

A detective spoke with Griffin at the scene and at the police station the day of the shooting, and, after waiving her rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), Griffin told police what happened. Police also took Griffin back to the crime scene, where she reenacted the shooting.

The neighbors testified that, on the morning of the shooting, they heard Griffin and the victim arguing and then heard two shots fired. Afterwards, Griffin knocked on their front door. Griffin was still holding the gun when she asked the neighbor for her phone to call 911. The neighbor testified she had heard the two arguing on several previous occasions. Another neighbor testified that she witnessed a prior altercation in which Griffin was attempting to leave the home with their daughter, and the victim took her car keys and smashed her cell phone on the ground.

During the course of their investigation, police learned that Griffin and the victim had a difficult relationship, with both sides being physically aggressive towards each other. The victim's sister testified that, in April 2020, the victim showed up at her house, bleeding from his hand, and told her that Griffin had chased him and cut him with a knife. She also testified that, in May 2020, Griffin bought a gun and stated she was going to kill the victim with it.

Based on these facts, Griffin was indicted for felony murder, aggravated assault, and possession of a firearm during the commission of a felony. At trial, the witnesses testified as recounted above. Griffin testified in her own defense. The jury convicted Griffin of aggravated assault and possession of a firearm during commission of a

felony. Griffin filed a motion for new trial, raising the grounds she now asserts on appeal. Following a hearing, the trial court denied the motion, and this appeal followed.

1. Griffin argues that the trial court erred by dismissing her pre-trial motion for immunity from prosecution under OCGA § 16-3-24.2 (2014). We find the trial court failed to apply the correct analysis.

Under Georgia law,

> [a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, . . . a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

OCGA § 16-3-21 (a). "A person who uses threats or force in accordance with Code Section 16-3-21 . . . [or] 16-3-23.1 . . . shall be immune from criminal prosecution therefor" except under certain circumstances not at issue here. OCGA § 16-3-24.2.

Under OCGA § 16-3-24.2, the trial court must determine whether a person is immune from prosecution prior to trial. See *Lightning v. State*, 297 Ga. App. 54, 56 (1) (676 SE2d 780) (2009); see also *Fair v. State*, 284 Ga. 165, 166 (1) (664 SE2d 227) (2008)*; Boggs v. State*, 261 Ga. App. 104, 106 (581 SE2d 722) (2003). "To avoid trial, a defendant bears the burden of proof to show that [s]he is entitled to immunity by a preponderance of the evidence." *Hughes v. State*, 312 Ga. 149, 156 (4) (861 SE2d 94) (2021); see also *Jennings v. State*, 363 Ga. App. 170, 175 (2) (869 SE2d 93) (2022). "In reviewing the denial of a motion for pretrial immunity, we must view the evidence in the light most favorable to the trial court's ruling and accept the trial court's findings of fact and credibility determinations if there is any evidence to support them." (Citation omitted.) *Ellison v. State*, 313 Ga. 107, 110 (868 SE2d 189) (2022); see also *Sifuentes v. State*, 293 Ga. 441, 444 (2) (746 SE2d 127) (2013).

Prior to trial, Griffin moved for immunity from prosecution pursuant to OCGA § 16-3-24.2 on the basis that she acted in self-defense in shooting the victim. At the hearing, Griffin testified that she was scared and feared the victim was going to hurt her and she had to defend herself, but that she did not intend to fire the first or second shot. She testified she had no recollection of pulling the trigger, she did not intend to

shoot the victim, and she never meant to hurt him. She also testified that, after she fired the first shot, the victim ran from the bathroom; she headed out of the bathroom behind him; and, as the victim started coming towards her, she then fired the second shot. At the conclusion of the hearing, the State moved to dismiss Griffin's motion for immunity from prosecution on the ground that she did not admit that she committed the act and thus could not claim a justification defense. The trial court granted the State's motion to dismiss. Griffin moved the trial court to reconsider, but it refused.[2]

When the trial court was presented with Griffin's pre-trial motion for immunity, it was required to consider whether Griffin met her burden of showing by a preponderance of the evidence that she was entitled to immunity because she acted in reasonable belief that her use of force was necessary to defend herself from the

---

[2] At trial, defense counsel renewed the immunity motion on the grounds that Griffin admitted she committed aggravated assault with a deadly weapon, but the State countered that, at that point in the trial, Griffin had not testified as to her fear or reasonableness in shooting the victim, and thus there had been no evidence of self-defense. The trial court again denied the motion. Griffin testified at trial that she grabbed the gun because she was afraid of the victim, but that she had not planned to hurt him or kill. She also admitted, however, that she intentionally shot the victim. Although Griffin argues in her reply brief that the State improperly relies on her trial testimony, we are mindful that we must consider only the testimony from the immunity hearing when reviewing a pre-trial motion for immunity from prosecution. See *Sifuentes*, 293 Ga. at 444 (2), n. 3.

victim. *Pate v. State*, 364 Ga. App. 107, 108-109 (3) (874 SE2d 132) (2022); *Hughes*, 312 Ga. at 157 (4). In support of her argument that the trial court failed in this regard, Griffin cites to *McClure v. State*, 306 Ga. 856 (834 SE2d 96) (2019). But, we have long before held that "[t]here is no requirement that [a defendant] had to admit to the specific allegations of violence in order to obtain the protection of [OCGA § 16-3-21 (a)]." *State v. Yapo*, 296 Ga. App. 158, 160 (2) (674 SE2d 44) (2009).

Here, however, the trial court determined that Griffin was not entitled to immunity because she testified that her actions were not intentional, as she did not intend to fire the first or second shot and did not intend to harm the victim. In so finding, the trial court relied on language in *Lightning*[3] regarding the affirmative *defense* of justification and its requirement for an admission of the crime before raising the

---

[3] The trial court relied on the following language in *Lightning*:
[W]ith a legal affirmative defense, the accused admits the elements of the crime, but seeks to justify, excuse, or mitigate by showing no criminal intent; all elements of the parts of the crime are admitted with the exception of the intent. All defenses which have been held to be statutory affirmative defenses meet these criteria, i.e., justification, self-defense or defense of others, rendering assistance to law enforcement officers, defense of habitation, defense of property other than habitation, entrapment, and coercion. Each of these affirmative defenses requires that the defendant admit the crime before he can raise such defense.
(Citation and punctuation omitted.) *Lightning*, 297 Ga. App. at 60 (5);

8

defense.[4] Id. at 60 (5). The trial court thus failed to apply the correct analysis.[5] See

*Pate*, 364 Ga. App. at 111 (3); see also *Yapo*, 296 Ga. App. at 160 (2) . The trial court

made no specific findings regarding whether Griffin had a reasonable fear that such

force was necessary to prevent the victim from attacking her. Instead, it conflated

immunity from prosecution under OCGA § 16-3-24.2 with the affirmative defense of

justification as set forth under OCGA § 16-3-21. See *Copeland v. State*, 310 Ga. 345,

349 (2) (850 SE2d 736) (2020). Because the trial court failed to apply the proper

analysis, we must vacate the trial court's order dismissing pretrial immunity, and

remand the case for reconsideration consistent with this opinion.

---

[4] Griffin argues that the trial court incorrectly relied on the language in *Lightning*, 297 Ga. App. at 56 (1), which, in turn, relied on the language in *Green v. State*, 240 Ga. App. 774, 776 (1) (525 SE2d 154) (1999), which *McClure* has since overruled. *McClure*, 306 Ga. at 864 (1). However, *McClure* dealt specifically with the affirmative defense of justification and whether a jury instruction regarding the defense was authorized, and it did not overrule longstanding precedent regarding pre-trial immunity from prosecution under OCGA § 16-3-24.2. Nevertheless, the trial court here did give a jury instruction on justification.

[5] In *Pate*, although the trial court made no findings of fact regarding the motion for immunity, we presumed the trial court knew the proper legal standard and applied the law accordingly. *Pate*, 364 Ga. App. at 111 (3). Here, we cannot make that assumption because the trial court's findings of fact show that it applied an incorrect standard long ago rejected by *Yapo*, 296 Ga. App. at 160 (2).

9

2. Given our conclusion above, we do not address Griffin's remaining arguments on appeal. Should the trial court once again deny Griffin's pretrial immunity motion on remand, Griffin may raise her unresolved enumerations in another appeal.

*Judgment vacated and case remanded with direction. Miller, P. J., and Land, J., concur.*